## BRENNAN v. WINKLER.

1. WILL—UNCERTAINTY—PAROL TESTIMONY.—A testatrix bequeathed her estate to Q. "for the benefit of W. during her natural life; and after her death would like the money used for the education of young men for the priesthood, or to educate individual orphan boys or orphan girls." In action involving the construction of this will, *held*, that parol testimony was inadmissible to remove the uncertainty in the meaning of this remainder, for even if shown that testatrix was a Roman Catholic, and had been reared under the protection and teachings of that Church, and, therefore, intended to include only the priesthood and orphans of that Church, it would not have affected the result reached.

2. IBID.—IBID.—CHARITABLE TRUSTS.—This remainder, though a charitable trust, is void for uncertainty, as the court could not carry it into effect, it being absolutely unlimited by country or latitude. The estate must, therefore, be disposed of as if this remainder had been absent from the will.

Before WALLACE, J., Charleston, June, 1891.

Action by Kate Brennan against Mary A. Winkler and D. J. Quigley.

*Mr. H. A. DeSaussure,* attorney for appellant.

*Messrs. A. D. Cohen* and *Mitchell & Smith,* contra.

November 3, 1892.    The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.    Ellen Agnes Brennan departed this life in March, 1888, leaving as her only heirs and distributees her two sisters, viz., the plaintiff Kate and the defendant, Mrs. Mary A. Winkler.  She left the following instrument of writing :

"CHARLESTON, S. C., Sept. 7, 1886.
"No. 46 Rutledge Avenue.

"I, Ellen Agnes Brennan, being of sound mind, do give all my possessions, consisting of seven shares of Southwestern Railroad in Georgia, and two thousand two hundred and fifty dollars, lent to Rev. C. C. Pendergrast, of Savannah, Georgia, for which he pays me 8 per cent. (8%) on the $2,250 monthly. The Rev. C. C. Pendergrast holds a certificate of the Southwestern stock, which, in the event of my death, I wish this $2,250, with the certificate for the Southwestern stock, turned over to the Rev. D. J. Quigley, for the benefit of my sister, Mrs. F. J. Winkler, during her mortal life, after her death would like the money used for the education of young men for the priesthood, or to educate individual orphan boys or orphan girls.  I hereby constitute Monsignore D. J. Quigley as my sole executor.  Witness my signature.  I hereby revoke all other wills made by me.  In witness whereof, I hereunto set my hand and affix my seal, this 8th day of September, A. D. 1886.  E. A. Brennan. [L. S.]"  This instrument was probated in common form May 11th, 1888, and Monsignore D. J. Quigley qualified as executor, and took upon himself the administration of the estate.  He took possession of the assets, paying over to Mrs. Winkler what is claimed to be the annual income thereof.

It seems that, in the view that the provisions of said paper were void, being "precatory, too indefinite, and create no trust capable of legal enforcement," Mrs. Winkler, in case the court

should so hold, agreed with the plaintiff, to waive the provisions of the will giving her a life estate, and to join in treating the estate as if the life estate had terminated, and the remainder were to be divided, as if their sister Ellen had died intestate as to the same. The plaintiff Kate instituted this proceeding, and, after stating the facts, demanded judgment as follows: *1.* That the provisions of the will disposing of the estate after the death of Mrs. Winkler be declared null and void. *2.* That the family agreement to divide the entire estate, as if the said Ellen Agnes Brennan had died intestate, be confirmed and directed to be carried out. *3.* That the defendant, Monsignore D. J. Quigley, be directed to account for the estate which came into his custody or possession, and his acts and doings in the administration of the offices assumed by him.

Mrs. Winkler answered, "That if the court shall adjudge the said provisions of the said will to be void and of no effect, she has agreed with her sister, the plaintiff, to waive the provisions of the will, giving this defendant a life estate, and to join in treating the estate as if the life estate had terminated, and the remainder then to be divided, as if their sister Ellen had died intestate as to the same, and she joins in the judgment asked for. Monsignore D. J. Quigley, claiming to be executor of and trustee under the will of Ellen Agnes Brennan, answered, among other things, that he is the owner and holder of said estate, upon the trusts therein declared. He denies the right of the sisters surviving to enter into any agreement binding upon the court to waive the provisions of said will, and insists that the trust set forth therein, after the death of Mrs. Winkler, is a legal and valid trust, capable of execution, &c., and prays to be hence dismissed, &c.

The appellant and respondents could not agree, and Judge Wallace settled the case as follows: "This action was regularly docketed for June term, 1891, was called June 23, 1891, and counsel for the defendant Quigley moved for a reference to the master on the grounds: (1) That said defendant had parol testimony to overcome the allegations of the complaint, that certain provisions of the will in question 'are void, being precatory, too indefinite, create no trust capable of legal enforcement.'

(2) That the action involved a difficult accounting. Counsel
for the plaintiff and Mrs. Winkler opposed any reference, on
the grounds that the vital question was purely one of law,
which the court should hear and determine, and whether
parol testimony was admissible for the purpose stated, was also
a question of law ; that the necessity for any accounting was
entirely dependent upon the decision of the question whether
the provisions of the will are void, being precatory, too indefi-
nite, create no trust capable of legal enforcement. The court
determined to hear the cause without reference, leaving the
question of accounting to be determined by the court, after it
had determined the precedent questions of law, &c. There was
a motion for continuance, &c. At this stage it was agreed by
counsel, all parties consenting in open court, that the cause be
considered as heard, that the issues raised by the pleadings,
and the question of the admissibility of parol testimony for the
purpose it was offered, should be submitted on written argu-
ment within thirty days to the court. The cause and arguments
were submitted and decree filed, September 5, 1891."

Judge Wallace decreed that the remainder of the estate of
Ellen Agnes Brennan, after the life estate of Mrs. Mary A.
Winkler, is undisposed of by will, and that her heirs at law
are entitled to the same, and ordered that the executor, Rev.
D. J. Quigley, do account before the master, &c., for the estate
in his hands, and that under the agreement, which must be
duly executed and made of record in this case, between Miss
Kate Brennan and Mrs. Mary A. Winkler, as to the disposition
of the estate of Ellen A. Brennan, he do pay out the balance in
his hands, after all due and lawful allowances have been made
therein, one-half to Miss Kate Brennan and the other half to
Mrs. Mary A. Winkler. The costs to be paid out of the estate
of Ellen A. Brennan, &c.

From this decree the defendant, D. J. Quigley, as executor
of Ellen A. Brennan, appeals to this court, and moves to re-
verse the same on the following grounds of error: "*1.* In
deciding this case, and making a final decree therein, upon the
pleadings only, without testimony to remove the alleged un-
certainty in the will of Ellen A. Brennan. *2.* In that he holds

that the words, 'would like,' used by Ellen A. Brennan in her will, did not create a trust in her estate, to be executed after the expiration of the life estate given Mrs. F. J. Winkler, and that those words convey no interest whatever in the property. *3.* In that he holds as invalid the trust declared by Ellen A. Brennan, in her will, as to her estate after the expiration of the life estate of Mrs. Winkler. *4.* In that he decreed 'that the remainder of the estate of Ellen Agnes Brennan, after the life estate of Mrs. Winkler, is undisposed of by will, and that her heirs at law are entitled to the same.' *5.* In that he has decreed an accounting before the master by the executor of Ellen A. Brennan, and distribution of her estate between the plaintiff, Kate Brennan, and defendant, Mary A. Winkler."

The questions involved in this case are interesting, and have been argued with unusual learning and research; but we do not think it necessary to follow the argument, or, with an affectation of learning, to reproduce the authorities. We will simply announce our conclusions. The first exception complains that a final decree was rendered upon the pleadings alone, without testimony to remove the alleged "uncertainty" in the will of Miss Brennan. No parol testimony was actually offered, but it was agreed that the cause should be considered as actually heard; that the issues raised by the pleadings, and the question of the admission of parol testimony for the purpose it was offered, should be submitted on written argument. The Circuit Judge declared the provision of the will void, without taking the parol testimony or ordering a reference for that purpose. That was equivalent to declining to admit the testimony for the purpose indicated. Was that error?

The rule certainly is, that the intention of a testator must be disclosed by the will itself, with possibly two exceptions: in the cases of a latent ambiguity, and of explaining the particular language used in the instrument. We are unable to see that either of these exceptions are applicable here. We can conceive of no parol testimony admissible in this case, unless it may possibly be such as is allowed by the fifth rule of Mr. Wigram, which permits extrinsic parol evidence "as to the

circumstances of the testatrix and her family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testatrix;" that is to say, to enable the judge to put himself, as near as possible, in the place and situation of the testatrix when she wrote her will. It may be that such proof might possibly have shown that she prepared her own will; that she had been reared under the protection and teachings of the Roman Catholic Church; that she was a member of that Church, and by the use of the word "priesthood" probably meant that of the Roman Catholic Church. But if so, we do not think that such testimony could have had the least effect in producing a different interpretation of the will from that reached by the Circuit Judge. We take it for granted that the Circuit Judge did not admit the testimony, for the reason, that it did not touch the vital point of the case.

All the other exceptions allege error in holding the trust declared by Ellen A. Brennan in her will as to her estate, after the life estate of Mrs. Winkler, to be void for uncertainty, &c. If the trust claimed to be declared by the testatrix had been a private trust, there could have been no doubt whatever as to its being invalid; but it is insisted that it is a public "charitable" as distinguished from a private trust, and as such, although precatory and somewhat indefinite, it will be sustained and administered by our courts. It is true that, under the English practice, one of the distinguishing elements of a "charitable" as compared with an ordinary trust, consists in the generality, indefiniteness, and even uncertainty, which is permitted in describing the objects and purposes or beneficiaries. But Mr. Pomeroy (2d volume, section 1029,) says: "With regard to the extent to which 'charitable trusts' have been adopted, and the jurisdiction over them exercised in the various States, there is the utmost conflict of judicial decision. It seems possible, however, to arrange the different States according to three general types, which shall represent with reasonable accuracy and certainty the existing condition of law upon the subject in this country." He places South Carolina in the second class; this class includes the larger portion of the States in which "charitable trusts" exist under a

somewhat modified and restricted form. "There is not a little divergence in the views maintained by the courts of the various States composing this class. In a few of them the statute of Elizabeth is held to be in force (not in this State), or one similar to it has been enacted. In a majority of them the doctrine of 'charitable trusts,' as a part of the ordinary jurisdiction and functions of equity, has been accepted in a modified and limited form; such trusts are upheld when the property is given to a person sufficiently certain, and for an object sufficiently definite. With regard to this element of certainty in the trustee and the objects, there is much diversity of opinion. The doctrine of *cy pres* is generally rejected," &c.

As to this element of certainty or uncertainty, so far as I have been able to discover, one of the main tests seems to be this, viz., that the court will not declare the trust unless it sufficiently appears that the donor designed to establish a charity, and the purpose is indicated with sufficient clearness to enable the court, by means of its settled doctrines, to carry the design into effect. If the trust claimed here were established, could the court, according to its established doctrines, carry the design into effect? The power of using the money for the education of young men for the "priesthood," whether of the Roman Catholic or other priesthood, is absolutely unlimited by country or latitude. From the nature of the trust claimed, it would not be under the administration of the court at all. See *Prichard* v. *Thomson*, 95 N. Y., 76; *Holland* v. *Alcock*, 108 *Id.*, 312; *Nichols* v. *Allen*, 130 Mass., 211; *Fosdick* v. *Town of Hempstead*, 125 N. Y., 581; *McCreary* v. *Burns*, 17 S. C., 50.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.