## 16914

K. C. NASH, Appellant, v. HATTIE GARDNER, Respondent

(84 S. E. (2d) 375)

*Messrs. E. C. Dennis, Jr.,* of Darlington, and *Robinson, Robinson & Dreher,* of Columbia, *for Appellant,*

*Messrs. Tison & Tison,* of Hartsville, *for Respondent,*

Sept. 29, 1954.

TAYLOR, Justice.

This appeal involves construction of the will of the late William H. Gardner and comes from the following agreed statement of facts:

William H. Gardner died in 1926 leaving a will dated April 8, 1919, and leaving surviving him his widow (who died intestate in 1942) and nine children, of whom respondent is one. The testator had a tenth child, Samuel, who died in 1922, leaving no wife or children surviving.

The case involves the ownership of a tract of three hundred acres, more or less, and known as the Home Place,

which in the will of the above named testator was given to the son Samuel, subject to limitations contained in the will.

. The provisions of the will pertinent to this case are items number Sixth, Fourteenth and Fifteenth. Appellant claims ownership of a fee simple title to the whole of said tract of land known as the Home Place. The title upon which appellant thus relies is the result of conveyances under which Etson Gardner acquired title to the property and conveyed the same to appellant, Nash. Respondent claims that by these conveyances and under the will Etson Gardner and consequently his grantee, Nash, only acquired eight-ninths of the property, the remaining one-ninth being vested in respondent, Hattie Gardner.

The case was referred for the taking of testimony and came on for hearing before Honorable J. Woodrow Lewis, Resident Judge of the Fourth Judicial Circuit, who rendered his opinion wherein he found against the contentions of appellant and held that the respondent, Hattie Gardner, owned a one-ninth interest in the property, and awarded her judgment in the sum of $2,205.55 as her share of compensation for appellant's use of the land and for waste claimed to have been committed by appellant.

Notice of intention to appeal from such decree was duly served and filed.

The defendants Powe and Guy are not concerned with any of the issues involved in this case since it is stipulated that the mortgages to them mentioned in the pleadings and in the testimony involve as indebtedness of less than $2,000-.00, and have been assigned to Samuel Want, Attorney, and that the assignee disclaims any lien upon or interest in the one-ninth interest in the property herein claimed to be owned by the respondent, Hattie Gardner.

The will under consideration reads as follows:

"State of South Carolina

"County of Chesterfield

"In the name of God, Amen:

"I William H. Gardner, of Darlington County, do make, ordain, publish and declare·this as and for my last will and testament—hereby revoking all wills and instruments of a testamentary nature heretofore by me made.

"First: I commit my soul to the gracious God who gave it and direct that my body shall be decently interred according to the rites of the Baptist Church and that a suitable monument be erected to mark my grave and that all expenses incurred therefor be paid out of my estate.

"Second: I will and direct that my executors hereinafter named shall pay all my just debts with the first money coming into their hands.

"Third: To my wife Ola Gardner, I give and bequeath to her so long as she remains my widow an ample and sufficient support of which shall be derived from my real and personal property and I further give and bequeath to my wife Ola Gardner full control my houses and twenty acres of land situated in Town of Bethune, S. C., for her benefit and the benefit and education of my minor children so long as she remains my widow but when she remarries or at her decease the said house and twenty acres of land shall belong to my son, William H. Gardner, Jr., that he shall be the sole owner of the same. Said house is known as the house I purchased from J. C. Curtis.

"Fourth: I give and bequeath to my son Etson Gardner one hundred and sixty acres of land known now as my Segars tract of land bound on the North by lands of W. L. McCoy formerly known as the Hearon land on the east by the Estate lands of Austin Gaston and lands of W. H. Gardner, on the west by lands of S. W. Blackwell, South by my home tract of land. I also give my son Etson Gardner four hundred dollars in money and our mule.

"Fifth: I give and bequeath unto my son Norman Gardner one hundred and four acres of land known as the Austin

Caston land bound on the east by lands of J. E. Davis North-east of lands Z. M. Blackwell on the south by lands of the estate of Mrs. Lou Watkins, west by lands of W. L. McCoy. I also give and bequeath unto my son, Norman Gardner forty-six acres of land. Same being a part of the Alex Dun-lap land providing that my son Norman Gardner shall pay my son Etson Gardner five hundred dollars in money as his share in said land and if for any reason Norman shall fail to pay Etson the money five hundred dollars, Etson to have the said land providing he pays Norman five hundred dollars.

"Sixth: I give and bequeath unto my two sons Samuel and Miller Gardner, my home tract of land on which I now reside containing about two hundred and fifty acres together with my tract of land known as my Watkins place containing about one hundred and sixty acres, to be divided equally be-tween them according to valuation. It is further my will and desire that all my sons shall have equal privilege of my swamp lands for pasturing purposes provided that each of them shall go equal share in keeping up the fences and when one of them shall fail in helping to bear his share in the up-keep of the said swamp lands as pastures, his share and privilege in said swamp lands shall cease and revert back to those who do keep the same in repair.

"Seventh: I give and bequeath unto my daughter, Kate Gardner, my tract of land known as the Lou Watkins place in Darlington County containing about twenty-five acres providing that the said Kate Gardner shall well and truly pay to my daughter Daisy Bradshaw the sum of three hun-dred dollars in money. It is further my will and desire that if the said Kattie Gardner shall fail to pay the said Daisy Bradshaw the sum of three hundred dollars as above set forth inside of four years from the date of the probating of this will the said tract of land shall be advertised and sold to the highest bidder and after Daisy Bradshaw shall have been paid the said sum of three hundred dollars and the ex-pense of said sale shall have been paid the balance of the

proceeds of the sale of the said land shall be paid to my daughter Kattie Gardner or her lawful heirs.

"Eighth: I give and bequeath unto my daughter Mary Blackwell one thousand dollars in money.

"Ninth: I give and bequeath unto my daughter Julia Blackwell the sum of Two Hundred dollars in money.

"Tenth: I give and bequeath unto my daughter Daisy Bradshaw the sum of Two Hundred dollars in money.

"Eleventh: I give and bequeath unto my daughter Hattie Gardner the sum of Eight hundred and fifty dollars in money.

"Twelfth: It is my will and desire that my tract of land in Chesterfield County, Alligator Township in the State of South Carolina, known as my Curtis place be advertised and sold according to law and out of the proceeds of said sale the money herebefore mentioned shall be paid and balance of the proceeds of said sale if any there be shall belong and be paid over to my son W. H. Gardner, Jr., when he shall become twenty-one years of age.

"Thirteenth: I give and bequeath to each of the following daughters a milk cow, Julia Blackwell, Daisy Bradshaw and Hattie Gardner and if there should be no cow I desire and provide that they have property or money to the value of a cow.

"Fourteenth: It is further my will that when the provisions as heretofore mentioned has been complied with and all moneys paid as is before mentioned and provisions made for the marking of my wife Ola Gardners grave with stone, if there is any money or property real or personal remaining or belonging to my estate I give and bequeath the same to my four youngest sons, namely, Etson Gardner, Samuel Gardner, Miller Gardner, and W. H. Gardner, Jr.

"Fifteenth: It is further my will and desire that if any of my children mentioned in this will shall die without having any lawful heirs their part of my estate shall revert back and belong to the heirs then living. It is further my will and

desire that my son Norman Gardner shall not have the right to sell or convey by deed any of the land named in this will until he shall have become thirty years of age and I hereby appoint J. C. Parker and S. B. Rogers my executors of this last will and testament who shall serve without bond.

"In witness whereof I hereunto set my hand and seal this the 8th day of April 1919.

his<br>
"William H. x Gardner (Seal)<br>
mark

"Signed, sealed, published and declared to be his last will and testament in the presence of us who in his presence and each other at his request have subscribed our names as witnesses.

| "S. B. Rogers | McBee, S. C. |
| "W. S. Rogers | McBee, S. C. |
| "Bennie Rogers | McBee, S. C. |

After the testator's death, the other devisee under Item 6, Miller Gardner, agreed to take the Watkins place rather than the home place thus leaving the home place undisposed of under Item 6. Appellant, Nash, acquired in 1945-1946, through Etson Gardner, the interest of all the heirs of W. H. Gardner, with the exception of Hattie Gardner, in the home place. Upon issue being joined with appellant claiming the whole of the home place and respondent claiming one-ninth thereof, and upon the testimony being reported, the Honorable J. Woodrow Lewis issued his decree of September 23, 1953, to the effect that respondent owns a one-ninth interest in the property, that the devise of the home place to Samuel Gardner did not lapse upon his death but was subject to substitution, under Item 15 of the will, by the heirs of the testator who survived Samuel. It was further found that for the seven years that appellant has occupied the property, he owes respondent one-ninth of $2,100.00 as rent and one-ninth of $17,750.00 as waste for the cutting of timber, the two items aggregating the amount of $2,205.55 which was awarded respondent and the cause referred back

to the Master to determine the form of partition to be allowed. From this order comes the appeal in this case.

Which of the two tracts mentioned in Item 6, Miller or Samuel was to take was a question to be decided between the two. Miller took the Watkins place and the other, the "home place", was to go to Samuel, he taking a fee simple with no limitations. This devise lapsed as Samuel did not live until the effective date of the will which was the death of the testator. *Albergotti v. Summers,* 203 S. C. 137, 26 S. E. (2d) 395; *Busby v. Busby,* 142 S. C. 395, 140 S. E. 801; *Rivers v. Rivers,* 36 S. C. 302, 15 S. E. 137; 57 Am. Jur. 956, Sec. 1425.

Item 14 provides that after certain conditions set forth in the will have been complied with "if there is any money or property real or personal remaining or belonging to my estate, I give and bequeath the same to my four youngest sons, Etson Gardner, Samuel Gardner, Miller Gardner and W. H. Gardner, Jr." While the foregoing language is not such as is generally found in the general residuary clause, it is difficult to imagine what a general residuary clause could do that Item 14 does not do with respect to such property as has not been disposed of by specific devises and bequests.

The testator had previously made an effort to dispose specifically of the various tracts of land owned by him; therefore, Item 14 must have been inserted with the contemplation of the possibility that some of these specific devises might lapse. Respondent takes the position that Item 14 of the will does not become operative because Item 15 provides a substitute devisee for Samuel Gardner under the devise of Item 6 with which we cannot agree. Stated simply, the question here is whether Item 15 becomes a substitute for Item 6 as to the property in question. Item 15 is clearly an attempt to control the property after the death of the testator and after the estates had vested and we are of the opinion that its purpose was not to name substitute devisees for persons whose estates had never vested under the will as was the case of Samuel Gardner. The words "shall

revert back" are of some significance in that they signify a devisement of an interest previously vested and as we have previously indicated such vestment could take effect only upon the effective date of the will which was the death of the testator. Item 15 could not have been intended to apply to those children who died during the testator's lifetime as during his lifetime "their part of my estate" was not vested and therefore no occasion for the property to "revert back," a will having no effect until the testator's death. *First National Bank of Holly Hill v. Bennett,* 206 S. C. 402, 34 S. E. (2d) 678; *Charleston Library Soc. v. Citizens & Southern National Bank,* 200 S. C. 96, 20 S. E. (2d) 623. If the substitution took place upon Samuel Gardner's death there would be a vesting and a divesting of interest before the publishing of the will. If there was such intent to substitute as contended by respondent it was not so clearly shown as to warrant this Court so holding. See *Clark v. Clark,* 19 S. C. 345; *Power v. Power,* 219 S. C. 56, 64 S. E. (2d) 14; *Rasor v. Rasor,* 173 S. C. 365, 175 S. E. 545; *Rivers v. Rivers,* 36 S. C. 302, 15 S. E. 137.

To give Item 15 the construction urged by respondent would completely destroy the application of Item 14 to any real estate except that thereafter acquired and such construction we do not believe was the intention of the testator; and we do not so construe the language used. See *Bryant v. Britt,* 216 S. C. 299, 57 S. E. (2d) 535, 16 A. L. R. (2d) 666; *Wates v. Fairfield Forest Products Co.,* 210 S. C. 319, 42 S. E. (2d) 529; *Hutto v. Ray,* 192 S. C. 364, 6 S. E. (2d) 747. On the other hand we are of the opinion that Item 15 is applicable only to the death of a child after the devise to such child has vested; therefore, Samuel's one-fourth interest passed to the heirs of the testator as intestate property; there being nine children, each would be entitled to one-ninth of Samuel's one-fourth interest or one-thirty-sixth of the property in question. There is no merit in appellant's contention that the devise in Item 14 constituted a class gift so as to vest the

entire estate in the survivors—Etson Gardner, Miller Gardner and W. H. Gardner, Jr. The gift was to the individuals named and the one-fourth interest of Samuel Gardner passed as intestate property.

Appellant further contends that the Court erred in giving respondent, Hattie Gardner, judgment in the amount of $2,205.55 for rent and waste on the property, this being based upon respondent having a one-ninth interest in such property. Appellant's contention is that he should be relieved of any judgment for rent and waste.

Paragraph Four of the respondent's counterclaim appears as follows:

"(4) That defendant, Hattie Gardner, is entitled to a reasonable rental for her share of the realty for the time plaintiff has been in possession of the land, and is entitled to one-ninth (1/9) of the amount plaintiff has decreased the value of the land by committing waste and cutting the timber."

And Paragraph Three of appellant's reply appears as follows:

"3rd. Plaintiff admits section (6) if it is determined that defendant is a co-tenant or tenant in common with plaintiff therein, and section (4) is admitted if it is determined that plaintiff and defendant are tenants in common in said premises."

It is readily seen, therefore, under the pleadings that respondent is entitled to recover a reasonable rental and for waste committed to the extent of her interest in the property in question, which in view of the foregoing is one-thirty-sixth. The Court found the rent and waste amounted in the aggregate to $19,850.00. It is, therefore, ordered that judgment be entered up in favor of Hattie Gardner for rent and waste in the amount of $551.39.

The order appealed from further held that whether or not the lands can be divided in kind or must be sold for equality of partition cannot now be decided as there is no evidence

on such issue and provides that the case be referred back to the Master on such question and directs him to report to the Circuit Court his findings.

It is the opinion of this Court that the order appealed from should be affirmed in its referring the case back to the Master with instructions to report back his findings with regard to partitioning the property but that it should be modified in other particulars in accordance with the views heretofore expressed and it is so ordered.

STUKES, OXNER and LEGGE, JJ., and BRUCE LITTLE-JOHN, Acting Associate Justice, concur.