## 17171

W. C. WATSON, as Administrator *Cum Testamento Annexo* of the Estate of Satterwhite J. Wall, Deceased, Plaintiff-Respondent, v. W. F. WALL, BISHOP WALL, J. POWER WALL, MARIE CRAVEN POWE, W. H. CRAVEN, W. BOYCE CRAVEN and LIZZIE W. SNOWDEN, as Heirs of Satterwhite J. Wall; and J. B. McCROREY, L. C. LANE, J. G. BOATWRIGHT, HUMBERT RICHARDSON and B. GAUSE SMITH, Members, and M. GAULT BEESON, Chairman, composing the Board of County Commissioners and Commissioners for the Poor of Marion County, Defendants, of whom W. F. Wall, Bishop Wall, J. Power Wall, Marie Craven Powe, W. H. Craven, W. Boyce Craven and Lizzie W. Snowden are Appellants.

(93 S. E. (2d) 918)

502

*Messrs. T. C. Callison, Attorney General, James S. Verner, Assistant Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, and *J. Malcolm McLendon,* of Marion, *for Appellant,*

*Messrs. Norton, Norton & Norton,* of Marion, *for Respondent,*

Messrs. *M. L. Meadors,* of Florence, and *Woods & Woods,* of Marion *for Appellants-Respondents,*

Messrs. *T. C. Callison, Attorney General, James S. Verner, Assistant Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, and *J. Malcolm McLendon,* of Marion, *for Appellant, in Reply,*

June 11, 1956.

Legge, Justice.

This action was commenced in November, 1952, by the administrator c. t. a. of the estate of Satterwhite J. Wall for construction of certain provisions of his will dated November 8, 1948, and for instruction as to the further administration of the estate. Joined as defendants were the testator's brothers and sisters, who would have taken as his sole heirs had he died intestate, and the members of the Board of County Commissioners of Marion County, who under the general statutory law, Code 1952, Title 71, Chapter 2, are the overseers of the poor of that county. One of the defendants, a sister of the testator, died intestate after the commencement of the action, and her heirs were duly substituted in her stead.

The testator had been for many years Superintendent of Education for Marion County, and was later a member of the General Assembly, in which he was serving at the time of his death on August 20, 1951. During his tenure in office as Superintendent of Education he studied law and was admitted to the bar; but he did not actively practice, although he occasionally drew wills,—among them his own here involved. He never married, and for many years prior to his death had lived at a hotel in Marion. At the time of his death his brothers and sisters were well advanced in years, the youngest being seventy-one and the oldest eighty-three; and all were without income sufficient for comfortable living. The record indicates that the testator's relations with them were not particularly close, although his will shows his concern that they should be comfortably provided for during their respective lives.

By Item Twelve of the will, the testator nominated Clinton Lodge No. 60 Ancient Free Masons, of Marion, S. C., as executor, and provided that if the Lodge should not be qualified to act, then the three highest officers of said Lodge, and their successors in office, should act as executors. The Lodge, by proper resolution, refused to accept the responsibility of the executorship, and its three highest officers likewise declined to act; so that the plaintiff, W. C. Watson, Esq., a close friend and relative of the testator, was appointed as administrator c. t. a.

By Item One of the will, the testator directed that his body be placed in a tomb to be erected either on his farm known as the Jasper W. Braswell place or on his lot in the town of Marion on McEachern Heights, the choice between the two locations being left to the executor's discretion.

Item Two contained the usual provision for payment of debts and expenses.

Item Three provided as follows:

"Item Three: It is my will and I direct that after the provisions of Item First and Item Second of this Will have

been complied with, all remaining portion of my property both real and personal be preserved and held intact so long as any one of my brothers or sisters may live and the income from same be used to preserve my tomb and the tomb of my father and mother and the tomb or grave of any brother or sister that may have died prior to me and to provide a comfortable living in accordance with their station in life for any brother or sister who may survive me, provided such brother or sister does not have sufficient means or funds to provide such comfortable living. At the death of the last of my brothers and sisters surviving me it is my will that all by property which is not specifically devised or disposed of or directed by this will to be sold be held in trust by my Executor or Executors and the income therefrom be used to forever preserve my tomb and the tomb or grave of my father and mother and the tomb or grave of my brothers and sisters as near as possible in their natural state, that is to say that they not be allowed to unduly depreciate for the lack of maintenance and care".

By Item Four he devised the Jasper W. Braswell place, after the death of all of his brothers and sisters, to the State of South Carolina to be used "as a demonstration or experiment farm as a memorial to me for the purpose of advancing the science of agriculture, horticulture, animal husbandry, and such other sciences as are practiced on the farms of South Carolina". This item also contained provisions for the preservation of certain timber and for the placing of a suitable marker indicating the testator as the donor of the farm. This devise was formally renounced by the State by joint resolution of the General Assembly approved by the Governor on March 1, 1952.

By Item Five the testator devised the lot on McEachern Heights to Marion County "for a hospital site upon which to erect a general hospital for the sick and wounded", and provided further that "in the event that some other person or persons has or have made provisions for the erection of such a hospital within the town of Marion which will be

done prior to the time this provision can be complied with, then and in that event I direct that said lot be used for a site upon which to erect a crippled children's hospital similar to the hospital at Greenville, S. C., which is supported by the Shriners of the State; or for a home for orphan children; provided, a suitable marker be placed on said site indicating me as the donor thereof for said purpose." The acceptance of this devise not appearing to be feasible, it was renounced by the Board of County Commissioners for Marion County, pursuant to a joint resolution of the General Assembly approved April 15, 1952.

By Item Six the testator directed that any indebtedness due him by his sister Lizzie E. Snowden or by the estate of H. P. Snowden be collected by his executor after the death of his said sister, and that the proceeds of that and any other debt due him at the time of his death "be added to the trust fund provided for in Item Three of this Will".

By Item Seven he directed that if any of his surviving relatives should desire to preserve his mother's home place as a memorial to her, or to use it for some charitable or philanthropic purpose, his interest therein should be used for that purpose, "but if this is not done then and in that event I will and direct that my interest in said property be collected and added to the fund named in Item Third of this will".

Item Eight directed that the testator's faithful colored tenant be allowed to remain on the farm so long as he might wish to do so, and that, so long as he remained there, he should be provided with a comfortable home, and that in the event of his becoming disabled the executor should provide him, from the funds of the estate, a comfortable living in accordance with his station in life, so long as he should live and remain on said farm.

Following are the provisions of the remainder of the will, other than Item Twelve, to which reference has already been made:

"Item Ninth: It is my will and I direct that all the rest and residue of my property both real and personal, except any money and any government or municipal securities, be sold and the moneys received therefrom and any money and government and municipal securities which I may have at the time of my death be added to the trust fund mentioned in the last paragraph of Item Third of this Will to be held and disposed of as provided in said Item Third.

"Item Tenth: It is my will and I direct that if the income from the fund provided for in Item Third of this Will should create a surplus after the provisions of Item Third of this Will have been amply complied with and the duties performed, said surplus may be used to aid the poor and indigent to obtain medical care and hospitalization in the judgment of my executor or executors.

"Item Eleventh: It is my will that if any provision or part of this my last Will and Testament be adjudged invalid that the remaining portion or portions of same be held to be in full force and have the same effect as if no such defect had appeared."

The matter came on to be heard before the Honorable G. Badger Baker, Judge of the Twelfth Circuit, who by his decree of November 3, 1953, held that under the pleadings there was presented a question as to whether the renounced devises in Items Four and Five passed as intestate property to the testator's heirs or became part of the trust estate under the residuary clauses of Items Three and Nine, but that the parties had conceded that these properties passed to the heirs as intestate property. He therefore confined his inquiry to the question of whether a valid and enforceable charitable trust was created by Item Ten; and this question he answered in the affirmative. From this decree the "heirs" have appealed, contending that the language of Item Ten was merely precatory, appointed no trustee, and was so indefinite and general as to be ineffectual to create a charitable trust.

On November 5, 1955, no person having theretofore appeared in the cause to represent the public interest, the Attor-

ney General petitioned this court, after notice to all parties, for leave to intervene as a party defendant for the purpose of protecting the interest of the public in the charitable trust; and by order of this court dated November 16, 1955, he was made a party defendant and granted permission to file exceptions to so much of the circuit decree as held that the renounced devises under Items Four and Five passed to the heirs at law. By his exceptions he contends that the property mentioned in these items became part of the residuary estate and passed under Items Three, Nine and Ten into the charitable trust created by Item Ten.

Before proceeding to discuss the issues here involved, we observe that: (1) a suitable tomb, as described in Item One of the will, has been provided; (2) sufficient assets have been segregated to comply with the requirements of Item Three relative to provision of a comfortable living for the testator's surviving brothers and sisters, and to the perpetual maintenance and care of tombs and graves; and (3) the net remaining assets of the estate are sufficient to finance a charitable trust of some extent.

We agree with the Circuit Judge that the language of Item Ten is not so indefinite and general as to be ineffectual to create a charitable trust.

As early as 1844, in *Shields v. Jolly,* 1 Rich. Eq. 99, 18 S. C. Eq. 99, our Court of Appeals upheld, against like contention, a devise and bequest, after a life estate in the testator's wife, "to the Methodist Church of which she may be a member at the time of her death, to be appropriated to the uses and purposes which the Conference may deem most advantageous for said Church, more especially for the support of Sunday Schools, for the purchase of Bibles and religious tracts, and the distribution of the same among the destitute, and for the support of missionaries".

In *Brennan v. Winkler,* 37 S. C. 457, 16 S. E. 190, the testratrix had in her will directed that her estate be " 'turned over to the Rev. D. J. Quigley, for the benefit of my sister

Mrs. J. F. Winkler, during her mortal life. After her death would like the money used for the education of young men for the priesthood, or to educate individual orphan boys or orphan girls' ". This court, affirming the judgment of the Circuit Court, held the quoted words inadequate to establish a charity, declaring that the purpose was not "indicated with sufficient clearness to enable the court, by means of its settled doctrines, to carry the design into effect", and adding: "The power of using the money for the education of young men for the priesthood, whether of the Roman Catholic or other priesthood, is absolutely unlimited by country or latitude. From the nature of the trust claimed, it would not be under the administration of the court at all". It is to be noted that the opinion in *Brennan v. Winkler* cited no authority on the issue of whether or not the language of the bequest was or was not sufficiently clear, made no reference to *Shields v. Jolly,* and did not base the decision on the theory that the words in question were merely precatory.

In *Dye v. Beaver Creek Church,* 48 S. C. 444, 26 S. E. 717, where the testator had bequeathed his estate, after payment of his debts, to his wife, " "for her to dispose and live on during her lifetime; and, if there be anything at her deceast after left after her deceast and burial, I give and bequeath to the B. C. Church, for poor children, for their tuition' ", the charitable bequest was sustained as being sufficiently definite and certain in its objective and as to its beneficiaries. The court, noting that the decision in *Shields v. Jolly* had not been mentioned in *Brennan v. Winkler,* inferred that the authority of the former remained unshaken.

*Dye v. Beaver Creek Church, supra,* was followed in *Harter v. Johnson,* 122 S. C. 96, 115 S. E. 217, 219, which was concerned with a residuary devise and bequest " 'for the purpose of establishing, building and equipping a public hospital in the town of Fairfax, for the treatment of white and colored patients' ", the testator authorizing and empowering his executors " 'to carry out this provision of my

will, according to their best judgment' ". Here the court, upholding the charity, declared that although the residuary estate had not been devised and bequeathed to a particular person in express terms, the setting aside of that estate for the purpose declared, coupled with the express direction to the executors above quoted, vested the estate in the excutors as trustees with discretionary powers.

The Act of March 19, 1925, XXXIV Stat. at L. 61, expressly recognized the validity of devises or bequests for charitable purposes wherein the trustee was given discretionary power in the selection and designation of the objects or beneficiaries of such trust or in carrying out the purposes thereof. It further provided that if no trustee should be named in the instrument creating such trust, or in the event of a vacancy in the trusteeship, the court of common pleas of the proper county should appoint a trustee to execute the trust in accordance with the true intent and meaning of the instrument creating it, such trustee so appointed to be vested with all of the power and authority, discretionary or otherwise, conferred by such instrument. Code, 1952, § 67-51.

In *Porcher v. Cappelmann*, 187 S. C. 491, 198 S. E. 8, 9, the testatrix had devised and bequeathed her residuary estate to a named trustee, " 'to be used and expended by him in such manner as he may deem wise in assistance in the City of Columbia, S. C., to crippled children, in the provision of medical and surgical attention to such children, purchase of medicines, braces or other appliances or any other article to assist and benefit said children, said work for crippled children to be conducted in the City of Columbia, S. C., but assistance to be rendered not to be limited to children of the City of Columbia, said trustee to be authorized to make such plans and use and pay for such assistance in this work as he may deem wise, and he being authorized if he deems wise to call to his assistance in this enterprise any agency or agencies, individual or corporate, that he may consider fit and proper to promote this work and to pay for the same out of this fund, all subject to his discretion' ". The circuit

court decree, holding that a valid charitable trust had been thus created, was on appeal ordered reported with this court's brief affirmatory opinion. The following excerpts from the decree are pertinent here:

"The plaintiff contends that the trust attempted to be established by the will is so indefinite, uncertain, incomplete and unlimited as to be impossible of enforcement by any Court and hence void. With this contention I do not agree. The main purpose of the trust is definite and certain; the clear purpose is to provide a means for rendering assistance to crippled children, the general nature of the assistance being definitely set forth by the testatrix. The details of carrying out the trust are to some extent left to the discretion of the trustee; this is usual in most charitable trusts created by will because the testator is attempting to provide for contingencies which will arise after his own death, and necessarily some discretion and power must be left to his trustee or trustees.

"Even if the item of the will in question did not specifically vest certain discretionary powers in the trustee, nevertheless he would have the implied power and duty to formulate a plan for carrying out the trust, the only limitation on such power being that the plan must not deviate from the main purpose of the trust. It was expressly so held by our court in *Dye v. Beaver Creek Church,* 48 S. C. 444, 26 S. E. 717, 59 Am. St. Rep. 724, a leading case in the United States upon this subject.

\* \* \*

"Plaintiff also urges as another objection to the trust that the trustee apparently has power to select the beneficiaries from wherever he pleases and thus the scope of benefaction of the trust may be worldwide, and not confined to citizens within the jurisdiction of the Court. This, if true, would not render a charitable trust, otherwise valid, void simply because its scope is worldwide.

\* \* \*

"Another contention of the plaintiff is that under the terms of the will the trustee is given such wide latitude of discretion as to both the selection of the beneficiaries and the details of carrying out the trust that it would be impossible for a Court of Equity to enforce the trust. The general purpose of the trust, aid to crippled children, and the scope of the aid, are clearly set forth by the testatrix. The fact that by the will the trustee is given broad discretionary powers in arranging the details of a scheme of administration to carry out the testatrix's expressed general purpose does not make the trust so indefinite or uncertain that it should be declared void.

\* \* \*

"Where the bequest is for a particular charity, even though expressed in general terms, the Court will sustain the charity when the plan and scheme for its management is left to the discretion of a trustee or trustees, and will if necessary formulate a scheme for the conduct of the charity or uphold the plan and scheme which the trustee or trustees, in his or their discretion, may adopt and formulate, and will prevent any interference therewith".

And the court, having reached these conclusions without regard to the 1925 Act before mentioned (which was then Section 9053 of the 1932 Code), added that had any doubt existed as to the validity of the trust, such doubt would have been removed by that nature.

It is thus manifest that *Brennan v. Winkler,* although not expressly overruled in *Dye v. Beaver Creek Church,* has ceased to be authoritative certainly to the extent that the views expressed in the former conflict with those expounded in the latter and in the more recent cases of *Harter v. Johnson and Porcher v. Cappelmann.* In the light of the case last mentioned, and of the provisions of 67-51, we conclude, as did the circuit judge, that the language of Item Ten of the will before us was adequate and effectual to create a charitable trust for the medical care and hospitalization of the poor and indigent.

*City of Columbia v. Monteith,* 139 S. C. 262, 137 S. E. 727, is not applicable. There the testatrix had devised her residence to the city, to be preserved as a memorial orphanage in which an industrial school should be maintained for the purpose of training for domestic service the children of indigent white persons living in or near the city. It was conceded that the use of the property in this manner was impossible; and the court disapproved, as· not within the charitable purpose contemplated by the will, the plan of the city for making the property a part of the city public school system, wherein courses embracing industrial training and domestic science should be taught.

We do not agree with the contention that the use of words "may be used" in Item Ten renders the provisions of that item precatory and therefore of no effect. In our search for the testator's intention, by which we must be governed in the interpretation of his will, we must consider words, phrases, clauses and sentences not separately, but as part of, and in their relation to, the whole instrument. *Ellison v. Mattison,* 112 S. C. 183, 98 S. E. 840; *Albergotti v. Summers,* 203 S. C. 137, 26 S. E. (2d) 395; *Shevlin v. Colony Lutheran Church,* 227 S. C. 598, 88 S. E. (2d) 674. It is to be noted that Item Ten, consisting of a single sentence, begins with the usual imperative words, "It is my will and I direct". Taken in connection with this positive expression, we agree with the circuit judge that the words "may be used" are referable to the exercise of the trustee's discretion in the management of the trust, and that the item, as a whole, is of sufficient imperativeness to create a trust. In this conclusion we are sustained by the fact that, except for provision for the comfort of the testator's brothers and sisters during their lives, and for the maintenance of certain family tombs and graves, the spirit of philanthropy, not of beneficence within the family, pervades the entire will. The testator recognized that the income from the funds provided for in Items Three and Nine would probably be more than sufficient to provide a comfortable living for his brothers and

sisters and, after their deaths, for the perpetual care of his tomb and the tombs or graves of his parents and his brothers and sisters; and in contemplation of a surplus being thus created, he expressed in Item Ten the intent that it be used for the medical care and hospitalization of the poor. All parties concede that a substantial surplus exists. To construe Item Ten as nugatory would result in this surplus remaining in trust, under the residuary provisions of Item Three, for the preservation of the tombs and graves before mentioned, a purpose rendered needless because of the existence of the surplus,—a result contrary to the manifest intention of the will.

We come now to consider the issue raised by the Attorney General's intervention, namely: Whether the renounced devises under Item Four (the Braswell farm) and Item Five (the McEachern Heights lot) passed into the charitable trust created by Item Ten, or descended, as intestate property, to the testator's heirs. This issue, as we have noted, was not contested among the parties before the circuit judge, all of them conceding that the properties in question passed, as lapsed devises, to the heirs; and the circuit decree accordingly so adjudged, perfunctorily.

It is argued that the Attorney General's intervention comes too late, and that the matter is *res judicata*, for the reason that the public interest, at least with regard to the McEachern Heights lot, was represented in the circuit court by the Board of County Commissioners of Marion County. It is further contended that the rights of the public are now barred in respect of the McEarchern Heights lot, by the resolution of the General Assembly authorizing the Board of County Commissioners to renounce that devise, and by the execution by the Board, pursuant thereto, of an instrument of renunciation and disclaimer; and, in respect of the Braswell farm, by the resolution of the General Assembly renouncing that devise. This contention is, in our opinion, without merit. The resolution of April 15, 1952, XLVII Stat. at L. 2688, merely authorized

the Board of County Commissioners to renounce the devise of the McEachern Heights lot because "it is manifestly impracticable for Marion County to erect the type of crippled children's hospital or the orphan home referred to in the will". The resolution of March 1, 1952, XLVII Stat. at L. 2222, renounced for the State the devise of the Braswell farm, reciting that it was not deemed wise that the State accept the obligations and responsibilities which would be entailed by its acceptance, and that, since the State was already maintaining an experimental farm about thirty miles from the property in question, it would be impracticable to maintain two such stations within so small an area. Neither resolution was in the slightest degree concerned with the charitable trust proposed by Item Ten to be established out of a possible surplus of the residuary estate. When the renunciatory resolutions were passed, the administrative year had not expired, and there is no suggestion in the record that the contemplated surplus existed or was assured at that time. Moreover the Board of County Commissioners had not the remotest interest, under Item Ten, in the charitable trust therein referred to. Nor was the State or the Attorney General, whose duty it is, under Section 1-240 of the 1952 Code, to "enforce the due application of funds given or appropriated to public charities within the State", made a party to the cause in the circuit court or, so far as the record shows, apprised of the existence of the residuary surplus until shortly before the application to this court by the Attorney General for leave to intervene.

A lapsed devise passes under a general residuary clause, and does not descend as intestate property. *Kirkland v. Moseley,* 109 S. C. 477, 512, 96 S. E. 608. It is also well settled, as a general rule, that a devise or bequest that has been renounced passes under the general residuary clause. 57 Am. Jur., Wills, Sections 1447, 1573.

In the very early case of *Richardson v. Sinkler,* 1802, 2 Desaus. 127, 2 S. C. Eq. 127, it was stated, without discussion or citation of authority, that certain

slaves, which the legatee had refused to accept because of a condition attached to the bequest, must be considered as intestate property and not as passing under the residuary clause, there being no bequest over in case of such refusal. It is to be noted that the will in that case had been subscribed by only two witnesses and was therefore ineffectual to dispose of the testator's considerable real estate, and that the residuary clause was, therefore, not a general one. But, apart from that, we can perceive of no logical reason why a renounced devise or bequest, like one that has lapsed, *Kirkland v. Moseley, supra,* or is void, *Swinton v. Egleton,* 3 Rich. Eq. 201, 24 S. C. Eq. 201, or otherwise ineffectual, should not pass under a general residuary clause. Counsel for the testator's heirs in the present case attempt to rationalize the decision in *Richardson v. Sinkler* upon the theory that it is more reasonable to believe that the testator intended the subject matter of a renounced devise or bequest to go to his heirs at law or distributees than to assume that he foresaw the possibility of a renunciation and intended, in such event, that the property should pass under the general residuary clause of his will. But this theory, if sound, would apply as well to a lapsed as to a renounced devise or bequest. The rule that a lapsed devise or bequest passes under the general residuary clause is founded not upon the assumption that the testator foresaw the possibility of lapse, but upon the presumption against partial intestacy, cf. 57 Am. Jur., Wills, Section 1158, and the corollary that, unless a contrary intention is apparent, the general residuary clause is to be construed as including all of the estate not otherwise effectually disposed of. See also *Peay v. Barber,* 1 Hill Eq. 95, 10 S. C. Eq. 95, to the effect that, presumably, the testator intends to take away from the residuary, only for the benefit of the particular, legatee. The rule is, in our opinion, equally applicable in the case of a renounced devise or bequest; and we reject as unsound the contrary view suggested in *Richardson v. Sinkler, supra.* In the case at bar, not only is there no intention apparent from the will that the testator's brothers

and sisters were to have the Braswell farm and the Mc-Eachern Heights lot in the event that these devises should be renounced; on the contrary it is clear from consideration of the will as a whole that the testator intended that they should receive from his estate, during their respective lives, funds sufficient to enable them to live comfortably, and no more.

No particular language is required to effect disposition of the entire residuum of the estate. *Nash v. Gardner,* 226 S. C. 165, 84 S. E. (2d) 375. If the intention to do so is apparent from the language used, it must be given effect. Such intention clearly appears upon consideration of Items Three and Ten of the will before us. Having made provision in Item One for his tomb and in Item Two for the payment of debts and testamentary expenses, the testator provided in Item Three that "all remaining portion of my property both real and personal" be held intact and the income therefrom used for the preservation of certain tombs and graves and to provide a comfortable living for such of his brothers and sisters as might not have sufficient means of their own, and, upon the death of the last of the brothers and sisters, "that all my property which is not specifically devised or disposed of or directed by this will to be sold" be held in trust and the income used for the perpetual care of certain tombs and graves.

Items Four and Five contained the ineffectual, because renounced, devises before mentioned.

Items Six and Seven provided for the addition to the trust fund under Item Three of (1) all debts collected by the executor, and (2) the testator's interest in his mother's home place.

In Item Nine he directed that "all the rest and residue of my property both real and personal, except any money and any government or municipal securities, be sold and the moneys received therefrom and any money and government and municipal securities which I may have at the time of my death", be added to the trust fund under Item Three.

And by Item Ten he provided that if a surplus of the trust fund under Item Three should remain after the trust provisions of Item Three should have been amply complied with, said surplus should be used for the establishment of the charitable trust hereinbefore referred to.

It is in our opinion quite clear that by Item Three the testator intended to, and did, dispose of so much of the residuum of his estate, including the subject matter of the renounced devises, as was required for the purposes of the trusts thereby created, and that by Item Ten he directed that any surplus remaining after those purposes had been accomplished be applied to the aforementioned public charity.

There is no merit in the contention that the provision in Item One for the erection of the testator's tomb on either the Braswell farm or the McEachern Heights lot precludes a holding that these properties may be sold under the provisions of Item Nine. It appears from the record that the tomb has been erected, and that its perpetual maintenance has been amply provided for. In these circumstances the sale of the remainder of the property on which the tomb stands would do no violence to the testator's intention.

The judgment of the lower court is affirmed to the extent that it holds that the charitable trust set up in Item Ten of the will is enforceable and valid; so much of it as holds that the properties described in Items Four and Five descended, as intestate property, to the heirs at law is reversed, it being our judgment that those properties passed, under the residuary provisions of the will, into the charitable trust. And the cause is remanded for such further proceedings, looking to the management of the charitable trust, as may appear necessary or advisable.

Affirmed in part and reversed in part, and remanded for further proceedings.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.