540 S.E.2d 313 (2000)
353 N.C. 142
James H. Pou BAILEY, A. Pilston Godwin, Harry L. Underwood, Henry L. Bridges, Rosalie T. Adams, Jesse M. Almon, Helen L. Andrews, Worth B. Askew, Billy A. Baker, Parker N. Bare, Arthur C. Beaman and Grace G. Beaman, Joseph G. Binkley, Robert L. Blevins, Ellie L. Boyles, Chancel T. Brown and Joan W. Brown, Elizabeth S. Butler, Dorothy T. Carmichael, John Carricker, Harold D. Coley, Sr., Anna L. Cooper, Charles C. Cooper and Bertie S. Cooper, T.J. Duncan and Esther P. Duncan, Dan R. Emory, Martin W. Ericson, Fred W. Gentry, Ivey B. Gordon and Izoria S. Gordon, Louis N. Gosselin, Earl T. Green, Bob Hammons, Darius B. Herring, Ray F. Holcomb, Tillie M. Holcomb, Kay C. Hurt, John I. Kiger and Marie K. Kiger, Clarence T. Leinbach, Walter G. Leming and Barbara C. Leming, Yates Lowe, Harriette B. McCormick, Virginia H. Mickey, William F. Morgan, Harrietta B. Mccormick, Earl Ray Parker, Calvin C. Pearce, Michael Pelech, Diane S. Peoples, Mildred R. Poindexter, Winnie D. Potts, Patsy M. Reynolds, Glenn D. Russell, Blanche S. Shipp, Clyde R. Shook, Harold E. Simpson, Sonnie B. Simpson, Lenora S. Smith, Frances J. Snow, Charles A. Speed, Justus M. Tucker, Walter P. Upright, Ralph B. Walker and Martha M. Walker, Jean A. Watson, Robert I. Weathersbee, Ruby Webster, Harry Lee Williams, Daniel W. Williams, Elizabeth H. Wilson, Wilbur G. Wilson, Ernest B. Wood, Thomas S. Worsham, individually for the benefit and on behalf of all others similarly situated, Petitioner-Plaintiffs, and
W.K. Aubry, Jr., James Bryan Barrett, Norman W. Cash, Roberta M. Cook, John Ed Davis, Daniel M. Dyson, Edwin C. Guy, Samuel L. Harmon, John Marshall Hartley, Donald Elliott Hartle, Martha M. Lawing, Douglas Lamar Mason, Delma Dalton Repass, Jr., William Elmer Riggs, Paul L. Salisbury, Jr., Richard A. Sharpe, Nelson Leroy Shearouse, Francis C. Simmons and Mary E. Simmons, Ned Raeford Smith, G. Vance Solomon And Eulalia T. Solomon, Thomas Lash Transou and Wilbur Eugene Young, Additional Petitioner-Plaintiffs,
v.
STATE of North Carolina, The North Carolina Department of Revenue, Janice Faulkner, in her capacity as Secretary of the North Carolina Department of Revenue, The North Carolina Department of State Treasurer, Harlan E. Boyles, in his capacity as Treasurer of the State of North Carolina, Respondent-Defendants.
James H. Pou Bailey, Donald L. Smith, Mildred Godwin as surviving beneficiary and as Executrix of the Estate of A. Pilston Godwin, Harry L. Underwood, Henry L. Bridges, Rosalie T. Adams, Jesse M. Almon, Helen L. Andrews, Worth B. Askew, Billy A. Baker, Parker N. Bare, Arthur C. Beaman and Grace G. Beaman, Joseph G. Brinkley, Robert L. Blevins, Ellie L. Boyles, Chancel T. Brown And Joan W. Brown, Elizabeth S. Butler, Dorothy T. Carmichael, John Carricker, Harold D. Coley, Sr., Anna L. Cooper, Charles C. Cooper and Bertie S. Cooper, T.J. Duncan and Esther P. Duncan, Dan R. Emory, Martin W. Ericson, Fred W. Gentry, Ivey B. Gordon and Izoria S. Gordon, Louis N. Gosselin, Earl T. Green, Bob Hammons, Darius B. Herring, Ray F. Holcomb, Tille M. Holcomb, Kay C. Hurt, John I. Kiger and Marie A. Kiger, Clarence T. Leinbach, Walter G. Leming and Barbara C. Leming, Yates Lowe, Harriette B. Mccormick, Virginia H. Mickey, William F. Morgan, Harrietta B. Mccormick, Earl Ray Parker, Calvin C. Pearce, Michael Pelech, Diane S. Peoples, Mildred R. Poindexter, Winnie D. Potts, Patsy M. Reynolds, Glenn D. Russell, Blanche S. *314 Shipp, Clyde R. Shook, Harold E. Simpson, Sonnie B. Simpson, Lenora S. Smith, Frances J. Snow, Charles A. Speed, Justus M. Tucker, Walter P. Upright, Ralph B. Walker and Martha M. Walker, Jean A. Watson, Robert I. Weathersbee, Ruby Webster, Harry Lee Williams, Daniel W. Williams, Elizabeth H. Wilson, Wilbur G. Wilson, Ernest B. Wood, Thomas S. Worsham, W.K. Aubry, Jr., James Bryan Barrett, Norman W. Cash, Roberta M. Cook, John Ed Davis, Daniel M. Dyson, Edwin C. Guy, Samuel L. Harman, John Marshall Hartley, Donald Elliott Hartle, Martha M. Lawing, Douglas Lamar Mason, Delma Dalton Repass, Jr., William Elmer Riggs, Paul L. Salisbury, Jr., Richard A. Sharpe, Nelson Leroy Shearouse, Francis C. Simmons and Mary E. Simmons, Ned Raeford Smith, G. Vance Solomon and Eulalia T. Solomon, Thomas Lash Transou and Wilbur Eugene Young, individually for the benefit and on behalf of all others similarly situated, Plaintiffs,
v.
State of North Carolina, The North Carolina Department of Revenue, Janice Faulkner, in her capacity as Secretary of the North Carolina Department of Revenue, The North Carolina Department of State Treasurer, Harlan E. Boyles, in his capacity as Treasurer of the State of North Carolina, and officer ex officio of the Retirement Systems, the Teachers and State Employees Retirement Systems of North Carolina, and the Local Government Employees Retirement Systems of North Carolina, Defendants.
Charles R. Patton, Eugene E. Moody, Mary L. Pritchard, Merrill R. Campbell, Thomas M. Groome, Jr., Robert J. Davis, Milton H. Quinn, Maxine S. Wood, individually and as Executor of the Estate of Robert V. Wood, Winton H. Williams, William E. Denton, Billy Clark, Norman W. Swanson, Woodford T. Moseley, Marion B. Zollicoffer, Ray Homesley, Daniel J. Quesenberry, Richard M. Heriot, Paul F. Chavez, William H. Adams, and others similarly situated, Plaintiffs,
v.
State of North Carolina, The North Carolina Department of Revenue, Janice Faulkner, in her capacity as Secretary of the North Carolina Department of Revenue, The North Carolina Department of State Treasurer, Harlan E. Boyles, in his capacity as Treasurer of the State Of North Carolina, Defendants.
James H. Pou Bailey, Donald L. Smith, Mildred Godwin as surviving beneficiary and as Executrix of the Estate of A. Pilston Godwin, Harry L. Underwood, Henry L. Bridges, Rosalie T. Adams, Jesse M. Almon, Helen L. Andrews, Worth B. Askew, Billy A. Baker, Parker N. Bare, Arthur C. Beaman and Grace G. Beaman, Joseph G. Brinkley, Robert L. Blevins, Ellie L. Boyles, Chancel T. Brown and Joan W. Brown, Elizabeth S. Butler, Dorothy T. Carmichael, John Carricker, Harold D. Coley, Sr., Anna L. Cooper, Charles C. Cooper and Bertie S. Cooper, T.J. Duncan and Esther P. Duncan, Dan R. Emory, Martin W. Ericson, Fred W. Gentry, Ivey B. Gordon and Izoria S. Gordon, Louis N. Gosselin, Earl T. Green, Bob Hammons, Darius B. Herring, Ray F. Holcomb, Tille M. Holcomb, Kay C. Hurt, John I. Kiger and Marie A. Kiger, Clarence T. Leinbach, Walter G. Leming and Barbara C. Leming, Yates Lowe, Harriette B. Mccormick, Virginia H. Mickey, William F. Morgan, Harrietta B. Mccormick, Earl Ray Parker, Calvin C. Pearce, Michael Pelech, Diane S. Peoples, Mildred R. Poindexter, Winnie D. Potts, Patsy M. Reynolds, Glenn D. Russell, Blanche S. Shipp, Clyde R. Shook, Harold E. Simpson, Sonnie B. Simpson, Lenora S. Smith, Frances J. Snow, Charles A. Speed, Justus M. Tucker, Walter P. Upright, Ralph B. Walker and Martha M. Walker, Jean A. Watson, Robert I. *315 Weathersbee, Ruby Webster, Harry Lee Williams, Daniel W. Williams, Elizabeth H. Wilson, Wilbur G. Wilson, Ernest B. Wood, Thomas S. Worsham, W.K. Aubry, Jr., James Bryan Barrett, Norman W. Cash, Roberta M. Cook, John Ed Davis, Daniel M. Dyson, Edwin C. Guy, Samuel L. Harman, John Marshall Hartley, Donald Elliott Hartle, Martha M. Lawing, Douglas Lamar Mason, Delma Dalton Repass, Jr., William Elmer Riggs, Paul L. Salisbury, Jr., Richard A. Sharpe, Nelson Leroy Shearouse, Francis C. Simmons and Mary E. Simmons, Ned Raeford Smith, G. Vance Solomon and Eulalia T. Solomon, Thomas Lash Transou and Wilbur Eugene Young, individually for the benefit and on behalf of all others similarly situated, Plaintiffs,
v.
State of North Carolina, The North Carolina Department of Revenue, Janice Faulkner, in her capacity as Secretary of the North Carolina Department of Revenue, The North Carolina Department of State Treasurer, Harlan E. Boyles, in his capacity as Treasurer of the State of North Carolina, and officer ex officio of the Retirement Systems, the Teachers and State Employees Retirement Systems of North Carolina, and the Local Government Employees Retirement Systems of North Carolina, Defendants.
James H. Pou Bailey, Donald L. Smith, Mildred Godwin as surviving beneficiary and as Executrix of the Estate of A. Pilston Godwin, Harry L. Underwood, Henry L. Bridges, Rosalie T. Adams, Jesse M. Almon, Helen L. Andrews, Worth B. Askew, Billy A. Baker, Parker N. Bare, Arthur C. Beaman and Grace G. Beaman, Joseph G. Brinkley, Robert L. Blevins, Ellie L. Boyles, Chancel T. Brown and Joan W. Brown, Elizabeth S. Butler, Dorothy T. Carmichael, John Carricker, Harold D. Coley, Sr., Anna L. Cooper, Charles C. Cooper and Bertie S. Cooper, T.J. Duncan and Esther P. Duncan, Dan R. Emory, Martin W. Ericson, Fred W. Gentry, Ivey B. Gordon and Izoria S. Gordon, Louis N. Gosselin, Earl T. Green, Bob Hammons, Darius B. Herring, Ray F. Holcomb, Tille M. Holcomb, Kay C. Hurt, John I. Kiger and Marie A. Kiger, Clarence T. Leinbach, Walter G. Leming and Barbara C. Leming, Yates Lowe, Harriette B. Mccormick, Virginia H. Mickey, William F. Morgan, Harrietta B. Mccormick, Earl Ray Parker, Calvin C. Pearce, Michael Pelech, Diane S. Peoples, Mildred R. Poindexter, Winnie D. Potts, Patsy M. Reynolds, Glenn D. Russell, Blanche S. Shipp, Clyde R. Shook, Harold E. Simpson, Sonnie B. Simpson, Lenora S. Smith, Frances J. Snow, Charles A. Speed, Justus M. Tucker, Walter P. Upright, Ralph B. Walker and Martha M. Walker, Jean A. Watson, Robert I. Weathersbee, Ruby Webster, Harry Lee Williams, Daniel W. Williams, Elizabeth H. Wilson, Wilbur G. Wilson, Ernest B. Wood, Thomas S. Worsham, W.K. Aubry, Jr., James Bryan Barrett, Norman W. Cash, Roberta M. Cook, John Ed Davis, Daniel M. Dyson, Edwin C. Guy, Samuel L. Harman, John Marshall Hartley, Donald Elliott Hartle, Martha M. Lawing, Douglas Lamar Mason, Delma Dalton Repass, Jr., William Elmer Riggs, Paul L. Salisbury, Jr., Richard A. Sharpe, Nelson Leroy Shearouse, Francis C. Simmons and Mary E. Simmons, Ned Raeford Smith, G. Vance Solomon and Eulalia T. Solomon, Thomas Lash Transou and Wilbur Eugene Young, individually for the benefit and on behalf of all others similarly situated, Plaintiffs,
v.
State of North Carolina, The North Carolina Department Of Revenue, Janice Faulkner, in her capacity as Secretary of the North Carolina Department of Revenue, The North Carolina Department of State Treasurer, Harlan E. Boyles, in his capacity as Treasurer of the State of North Carolina, and officer ex officio of the Retirement Systems, the Teachers and State Employees Retirement Systems of North Carolina, and *316 the Local Government Employees Retirement Systems of North Carolina, Consolidated Judicial Retirement System and the Local Government Employees Retirement System of North Carolina, Defendants.
Dan R. Emory, E. Michael Latta, individually and on behalf of all others similarly situated, Plaintiffs,
v.
State of North Carolina, and Harlan E. Boyles, Treasurer of the State of North Carolina, Defendants.
No. 56PA00-2.
Supreme Court of North Carolina.
December 21, 2000.
*317 Boyce & Isley, by G. Eugene Boyce and Philip R. Isley, Raleigh; and Womble Carlyle Sandridge & Rice, PLLC, by Keith W. Vaughan and W. David Edwards, Winston-Salem, for plaintiff-appellees
Michael F. Easley, Attorney General, by Edwin M. Speas, Jr., Chief Deputy Attorney General, and Norma S. Harrell and Thomas F. Moffitt, Special Deputy Attorneys General, for defendant-appellants.
Gulley & Calhoun, by Michael D. Calhoun, Durham, on behalf of North Carolina Academy of Trial Lawyers, amicus curiae.
Law Offices of William F. Maready, by William F. Maready and Gary V. Mauney, Winston-Salem, on behalf of the 4th Branch, Coalition of State, Local and Federal Government Retiree Organizations; Federal Retiree Task Force of North Carolina; State Employee Association of North Carolina; the Retired Officer Association, North Carolina Council of Chapters; N.C. State & Local Employees Tax Rights Committee; National Association of Retired Federal Employees, North Carolina Federation of Chapters; North Carolina Police Officers Association; North Carolina Highway Patrol Retirees' Association; Air Force Association; Air Force Sergeants Association; Retired Military Association of North Carolina; National Guard Association of North Carolina; Army Aviation Association of America; Air Force Association; Association of Military Surgeons of the United States; Association of the United States Army; Chief Warrant Officer and Warrant Officer Association, United States Coast Guard; Commissioned Officers Association of the United States; Public Health Service, Inc.; Enlisted Association of the National Guard of the United States; Fleet Reserve Association; Gold Star Wives of America; Jewish War Veterans of the United States of America; Marine Corps League; Marine Corps Reserve Officers Association; the Military Chaplains Association of the United States of America; Military Order of the Purple Heart; National Guard Association of the United States; National Military Family Association; National Order of Battlefield Commissions; Naval Enlisted Reserve Association; Naval Reserve Association; Navy League of the United States; Reserve Officers Association; the Retired Enlisted Association; the Retired Officers Association; the Society of Medical Consultants to the Armed Forces; United Armed Forces Association; United States Army Warrant Officers Association; USCG Chief Petty Officers Association; Veterans of Foreign Wars; and Veterans' Widows International Network, amici curiae.
ORR, Justice.
This matter is before the Court on appeal from the trial court's order granting attorneys' fees to counsel representing prevailing plaintiffs in a class action against the State. The Attorney General originally appealed the order to the Court of Appeals. Plaintiffs followed by filing with this Court a petition for discretionary review to bypass the Court of Appeals, which we granted. At issue are whether the Attorney General has standing to challenge the fees awarded to opposing counsel and whether such fees are excessive. In addition to the appeal, the Attorney General filed a motion for review of these issues pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure and petitioned this Court for a writ of certiorari. Plaintiffs have countered by filing with this Court a motion to dismiss the Attorney General's appeal.
This matter arises out of the long and contentious litigation between plaintiffsa consolidated class of retirees (both state and federal)and the State over the constitutionality of a tax exemption cap on retirement benefits. To date, the case, on one issue or another, has been appealed to this Court five times. In Bailey v. State, 330 N.C. 227, 412 S.E.2d 295 (1991) (Bailey I), cert. denied, 504 U.S. 911, 112 S.Ct. 1942, 118 L.Ed.2d 547 (1992), class plaintiffs took a voluntary dismissal *318 after this Court concluded that their tax challenge failed to comply with mandatory statutory requirements. In Bailey v. State, 348 N.C. 130, 500 S.E.2d 54 (1998) (Bailey II), this Court: (1) affirmed a trial court's holding that the disputed tax was unconstitutional as "an improper impairment of contract and a taking of property without just compensation," id. at 167, 500 S.E.2d at 76; and (2) held that the class of plaintiffs could not be limited to those who filed protests over the tax, id. at 166, 500 S.E.2d at 76. In Bailey v. State, 351 N.C. 440, 526 S.E.2d 657 (2000) (Bailey III), decided after the parties had reached a settlement in the case, we determined the date that interest began to accrue on the settlement's initial payment. Shortly thereafter, in Bailey v. State, 352 N.C. 127, 529 S.E.2d 448 (2000) (Bailey IV), this Court determined the limitations on who would qualify for eligibility as a class member. Now, in "Bailey V," the Attorney General asks that we review the issue of attorneys' fees, as awarded by the trial court, to plaintiffs' Class Counsel. We decline to do so, for reasons set forth in Parts II and III of this opinion.

I

A
This case commenced nearly a decade ago as a certified class action involving approximately 200,000 class members who alleged that a tax imposed on their retirement benefits was illegal. This Court, in Bailey II, agreed with the plaintiffs and held that the tax was unconstitutional. Subsequent to the Bailey II decision, attorneys for the class agreed to a settlement with the State in the amount of $799,000,000, which was to be distributed as a refund to affected class members in proportion to taxes each had actually paid. The settlement fund was established by an act of the General Assembly, which simultaneously "appropriated" and "transferred" monies from the State's General Fund to a reserve fund intended to compensate plaintiffs. Act of Sept. 30, 1998, ch. 164, sec. 2, 1998 N.C. Sess. Laws 534, 534.
As part of the 7 October 1998 order approving the settlement, the trial judge set aside 15% of the award to serve as a reserve fund for plaintiffs' attorneys' fees. The trial judge then appointed a referee to review class counsel's expenditures throughout the litigation. After examining the referee's report, the trial judge ordered that Class Counsel, along with their respective co-counsel, be paid fees of 8% of the $799,000,000 in the plaintiffs' common fund, an amount equal to $63,920,000. The 24 March 2000 order "Memorandum and Order on Application for Assessment of Attorney Fees and Costs"signed by Superior Court Judge Jack A. Thompson, who was appointed on 3 June 1998 by the Chief Justice to oversee the case through its completion, precipitated the Attorney General's filing of a notice of appeal.
From the outset, we note that the Attorney General represented the State and its various agencies as defendants throughout this case's lengthy litigation, a position that placed his office squarely at odds with plaintiffs' interests for nearly a decade. Nevertheless, the Attorney General now contends that he has changed hatseschewing his former clients in order to champion the cause of his long-term adversariesbecause his self-described role as "defender of the public interest" allows, if not compels, him to do so. In short, the Attorney General argues that the amount awarded as fees to Class Counsel is excessive and concludes that since none of the prevailing class members have appealed the allocation of such fees, his office must carry the mantlein the public interest.

B
The settlement agreement between class members and the State was signed by legislative representatives acting on behalf of the State and counsel for plaintiffs. It was additionally approved as to form by the Attorney General and was ultimately expressed as a consent order signed and approved by Judge Thompson. The order contains the following provision:
7. Attorney fees, costs and the expenses of administration shall be determined by the Court and shall be paid from the Settlement Fund. The defendants [the State, as represented by the Attorney General] *319 waive any rights to be heard concerning these matters.
Moreover, the "Settlement Fund" referenced in provision 7 is composed of monies awarded to plaintiffs in satisfaction of their claim against the State. Although paid from the state treasury, the fund represents taxes illegally taken from class members. Once the settlement took effect, the funds were no longer state property but were money that belonged to the plaintiffs themselves.
From these facts, it is readily apparent that: (1) the State, as defendant, expressly agreed that it would not involve itself in the issue of plaintiffs' attorneys' fees; and (2) plaintiffs, none of whom appealed, were paying their attorneys not with State funds but with their own money. Thus, the Attorney General's clientthe State as defendantis without interest in either the allocation of attorneys' fees or the funds that paid them.
Despite this backdrop, the Attorney General's representatives sought to involve themselves in the attorneys' fees question from the outset, although at no point did they move to formally intervene as a party pursuant to Rule 24 of the North Carolina Rules of Civil Procedure. When the trial court received Class Counsel's application for fees, the Attorney General filed an adversarial response to the application. In preparation for oral arguments before the trial court on the issue, the Attorney General filed a motion to be heardand he was. His representatives also filed with the trial court a demand for access to plaintiffs' attorneys' billing records. Although the demand motion was denied, the trial court subsequently appointed a special referee to examine and assess those records. When plaintiffs moved to bar the Attorney General from further participation in the fees issue, his representatives filed a response in support of their continued presence. The issue was apparently never fully resolved, as the record reveals no definitive ruling by the trial judge on plaintiffs' motion. Finally, in response to the trial court's order awarding plaintiffs' attorneys' fees, the Attorney General filed this appeal, which bypassed review by the Court of Appeals when this Court allowed plaintiffs' petition for discretionary review. See N.C.G.S. § 7A-31(b) (1999).

II
In essence, the Attorney General considers the attorneys' fees awarded in this case to be "excessive," and argues that this Court should review both the amount of the awarded fees and the methods used by the trial court to calculate them. By way of establishing standing as a proper party to pursue his substantive claims, the Attorney General seeks to downplay his ten-year tenure as counsel for defendants in favor of gaining recognition for his self-ascribed, common law role as "defender of the public interest." According to the Attorney General, Class Counsel have an inherent conflict of interest with their own class members when it comes to the matter of their fees. Therefore, in order to ensure that the attorneys are not financially advantaged to the class members' detriment, the Attorney General advocates that his office be viewed as both overseer and protectorate, and justifies his intervention thusly: (1) because the attorneys' fees awarded are excessive and because such excessive fees are not in the public interest, the Attorney General, as defender of the public interest, is obligated to act; (2) moreover, because he served as counsel for defendants throughout this case's long history, the Attorney General is uniquely qualified to so act.
In further defense of his right to appeal the fees plaintiffs' attorneys have been awarded in this case, the Attorney General argues that he has extensive common law powers "to act in the public interest independently of his statutory duties to represent the State." See N.C.G.S. § 114-1.1 (1999) (providing that "[t]he General Assembly reaffirms that the Attorney General has had and continues to be vested with those powers ... that existed at the common law, that are not repugnant to or inconsistent with the Constitution or laws of North Carolina"). We acknowledge that the Attorney General has common law powers as recognized by the General Assembly but those powers do not apply to the present case. Nonetheless, the Attorney General proceeds to lay claim specifically *320 to his common law power "to take actions necessary for the protection of property and revenue" of the citizens of North Carolina, as recognized in Martin v. Thornburg, 320 N.C. 533, 546, 359 S.E.2d 472, 479 (1987), a case involving a lease of property by the state. Thus, in the Attorney General's view, when he acts pursuant to this common law power, as in the case sub judice, his client is not the State but "the public interest." We note, however, that the Attorney General fails to explain or establish by case law how his power to take actions necessary for the protection of "property and revenue" of the state's citizens translates into a power to take actions necessary for the protection of "the public interest."
According to the Attorney General, it is the exercise of this broad, common law power to "defend the public interest" that allows his office to pursue this appeal. In sum, the Attorney General argues that plaintiffs' attorneys' fees in this case were "excessive," and that if such an excessive fee award stands, it will serve to inflate fees in future class actions against the Statea result adverse to the public interest.
The Attorney General's argument is unconvincing for two reasons. First, the Attorney General cites to no sourcecase or statutewhich suggests that his common law power to defend the public interest as an entity separate from the State extends to circumstances analogous to the facts of this case. While this Court held in Martin v. Thornburg that the Attorney General had a duty to prosecute all actions necessary to defend "the property and revenue" of the people, 320 N.C. at 546, 359 S.E.2d at 479, it did not recognize a distinction between either the "people" and the "State," or their respective interests in that case. 320 N.C. at 546, 359 S.E.2d at 479. Moreover, no language within the Martin holding can be construed as to imply that the Attorney General may act to defend the "people's" interest at the expense of the State's interest. The potential for such conflict is evidenced by the State's expressed agreementmade while represented by the Attorney Generalnot to involve itself in the issue of plaintiffs' attorneys' fees, a position at odds with the Attorney General's present contentions.
Second, in the absence of case law supporting the Attorney General's view, we examine next whether his claim of authority is rooted in statutory or constitutional mandates. Article III, Section 7(2) of the North Carolina Constitution, which creates the office of the Attorney General, simply states that the "duties [of the Attorney General] shall be prescribed by law." Such duties, therefore, are left to the discretion of the General Assembly and are set forth in N.C.G.S. § 114-2. Subsection (1) of N.C.G.S. § 114-2 requires the Attorney General to defend all actions in which the State is a party or is interested, while subsection (2) delineates the various State entities entitled to such defense. Neither subsection makes any reference to "the public interest." Subsection (3) has been repealed, and subsections (4), (5), (6), and (7) deal with designated duties that fall outside the realm of this case. The statute's final subsection, (8), is divided into two parts and reads, in pertinent part, as follows:
It shall be the duty of the Attorney General:
....
(8) Subject to the provisions of G.S. 62-20:

a. To intervene, when he deems it advisable in the public interest, in proceedings before any courts, ... in a representative capacity for and on behalf of the using and consuming public of this State. He shall also have authority to institute and originate proceedings before such courts,... and shall have authority to appear before agencies on behalf of the State and its agencies and citizens in all matters affecting the public interest.
N.C.G.S. § 114-2(8)(a) (1999) (emphasis added). As noted in the statute itself, subsection (8)(a) is subject to the provisions of N.C.G.S. § 62-20, which outline the Attorney General's function and duties while participating in Utilities Commission proceedings.[1] Moreover, *321 while subsection (8)(a) allows the Attorney General to intervene in proceedings when he deems it to be advisable "in the public interest," he may do so only as a representative of "the using and consuming public." (Emphasis added.) An examination of prior case law indicates that the Attorney General has served as such a representative under circumstances in which "the using and consuming public" were persons who used and/or consumed utility-related goods and services. See, e.g., State ex rel. N.C. Utils. Comm'n v. Old Fort Finishing Plant, 264 N.C. 416, 142 S.E.2d 8 (1965); State ex rel. Utils. Comm'n v. N.C. Textile Mfrs. Ass'n, 59 N.C.App. 240, 296 S.E.2d 487 (1982), rev'd on other grounds, 309 N.C. 238, 306 S.E.2d 113 (1983); State ex rel. Utils. Comm'n v. General Tel. Co. of S.E., 12 N.C.App. 598, 184 S.E.2d 526 (1971), modified on other grounds, 281 N.C. 318, 189 S.E.2d 705 (1972). Such cases, as dictated by the language of N.C.G.S. § 114-2(8)(a) and N.C.G.S. § 62-20, were properly argued in proceedings originating before the Utilities Commission.
In his appeal to this Court, the Attorney General refers to no cases or other authority which suggest that his power to intervene under subsection (8)(a) extends to circumstances outside the scope of Utilities Commission proceedings. As for his authority to "institute and originate proceedings ... and... to appear before agencies on behalf of the State and its ... citizens in all matters affecting the public interest"as delineated in subsection (8)(a)'s second clausewe note: (1) the clause is also subject to the provisions of N.C.G.S. § 62-20, (2) the Attorney General is seeking to intervene in an existing action here and is not "institut[ing] or originat[ing]" a proceeding, and (3) the Attorney General here is not seeking to "appear before [an] agenc[y]" but rather to appear before a court of law.
Even if we were to accept the Attorney General's premise that the issue of class action attorneys' fees is of public interest and that the public is somehow effectively served by allowing a defendant's long-term counsel to intervene on behalf of plaintiffsa questionable proposition to be sure-the power to intercede does not grant the Attorney General an unconditional license to intrude in court affairs. The North Carolina Rules of Civil Procedure require a timely application from "anyone" seeking "to intervene in an action." N.C. R. Civ. P. 24 (emphasis added). Conspicuously absent from the numerous documents submitted to the trial court by the Attorney General, while allegedly acting in his independent capacity as defender of the public interest, is such an application.
North Carolina's intervention rule is divided into two substantive parts addressing both interventions as a matter of right and permissive interventions. The statute provides for interventions as a matter of right
[w]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
N.C. R. Civ. P. 24(a)(2). In the alternative, applicants seeking permissive intervention may do so: (1) when a statute confers a conditional right to intervene, or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. N.C. R. Civ. P. 24(b). Again, assuming arguendo that the Attorney General *322 meets the criteria of an applicant under either subsection, he must make his application pursuant to the procedural guidelines set forth in the rule's subsection (c):
A person desiring to intervene shall serve a motion to intervene upon all parties affected thereby. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute gives a right to intervene, except when the statute prescribes a different procedure.
N.C. R. Civ. P. 24(c). As a review of the record reveals neither an intervention motion on the part of the Attorney General nor an order granting such a motion from the trial judge, we are constrained by law to conclude that the Attorney General, at least in regard to his asserted role as "defender of the public interest," is not a party to this action. As a consequence, we now must consider whether his appeal as a nonparty is appropriate.
In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure. Crowell Constructors, Inc. v. State ex rel. Cobey, 328 N.C. 563, 402 S.E.2d 407 (1991) (per curiam); Currin-Dillehay Bldg. Supply, Inc. v. Frazier, 100 N.C.App. 188, 394 S.E.2d 683, appeal dismissed and disc. rev. denied, 327 N.C. 633, 399 S.E.2d 326 (1990). The provisions of Rule 3 are jurisdictional, and failure to follow the rule's prerequisites mandates dismissal of an appeal. Abels v. Renfro Corp., 126 N.C.App. 800, 486 S.E.2d 735 (1997). In addition, the rules of the Supreme Court that regulate appeals, such as Rule 3, are mandatory and must be observed. State v. Walker, 245 N.C. 658, 660, 97 S.E.2d 219, 221 (1957), cert. denied, 356 U.S. 946, 78 S.Ct. 793, 2 L.Ed.2d 821 (1958); Womble v. Moncure Mill & Gin Co., 194 N.C. 577, 140 S.E. 230 (1927). The rule may not be disregarded by the legislature, by the judge of a superior court, or by litigants or counsel. Walker, 245 N.C. at 660, 97 S.E.2d at 221.
Rule 3 specifically designates that "any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a civil action or special proceeding may take appeal." N.C. R.App. P. 3 (emphasis added). More specifically, only a "party aggrieved" may appeal a trial court order or judgment, and such a party is one whose rights have been directly or injuriously affected by the action of the court. Culton v. Culton, 327 N.C. 624, 398 S.E.2d 323 (1990).
A careful reading of Rule 3 reveals that its various subsections afford no avenue of appeal to either entities or persons who are nonparties to a civil action. Therefore, as we have already determined that the Attorney General is not a party to the case sub judice, we can find no grounds on which to allow his appeal. Accordingly, as presented, it must be dismissed.

III
As alternatives to his appeal, the Attorney General seeks review of the attorneys' fees issue by: (1) petitioning this Court for a writ of certiorari, pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure; and (2) requesting that this Court exercise its supervisory jurisdiction pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure. We address the two avenues in successive order.
Rule 21 provides that a writ of certiorari may be issued to permit review of trial court orders under three circumstances: (1) when the right to an appeal has been lost by failure to take timely action, (2) when no right of appeal from an interlocutory order exists, or (3) when a trial court has denied a motion for appropriate relief. N.C. R.App. P. 21(a). Here, we have no interlocutory order or motion for appropriate relief to consider. Moreover, as it has been determined that the Attorney General has no right to an appeal (see Part II, supra ), no such right could be lost by a failure to take timely action. Therefore, no circumstances exist that would permit the Court to issue a writ of certiorari pursuant to Rule 21.
Nevertheless, the Attorney General asks the Court to consider his petition outside the formal parameters of Rule 21 and argues that we should do so pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, which provides:

*323 To prevent injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided in these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.
N.C. R.App. P. 2. The plain language of the rule grants this Court the discretion to suspend appellate rules either "upon application of a party" or "upon its own initiative." As it has already been determined that the Attorney General is not a party to this action, this matter is thereby subject to review only through our initiative. However, even if we were so inclined, suspension of the appellate rules under Rule 2 is not permitted for jurisdictional concerns. See Bromhal v. Stott, 116 N.C.App. 250, 447 S.E.2d 481 (1994), aff'd, 341 N.C. 702, 462 S.E.2d 219 (1995); see also Von Ramm v. Von Ramm, 99 N.C.App. 153, 156, 392 S.E.2d 422, 424 (1990) (adopting United States Supreme Court holding that an appellate court "`may not waive the jurisdictional requirements ..., even for "good cause shown" under Rule 2'" (quoting Torres v. Oakland Scavenger Co., 487 U.S. 312, 317, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285, 298 (1988))). Since the Attorney General is not a party to this case for purposes of appeal pursuant to Rule 3(a), we are without a basis for jurisdiction over the matter. See N.C. Const. art. IV, § 12(1) (providing that "the Supreme Court shall have jurisdiction to review upon appeal any decision of the courts below") (emphasis added).[2] As a consequence, suspension of the rules in order to accommodate the Attorney General's petition under the facts of this case is beyond the purview of this Court.
In conclusion, we dismiss as improper the Attorney General's appeal of the trial court's order awarding attorneys' fees to Class Counsel. In addition, the Attorney General's petition for a writ of certiorari to review the order of the Superior Court is dismissed, as is his motion seeking review of the order under Rule 2 of the Rules of Appellate Procedure.
APPEAL DISMISSED.
Chief Justice FRYE dissenting.
I respectfully dissent from the majority decision. Assuming, as the majority so painstakingly asserts, that the Attorney General does not have standing to appeal the award of attorneys' fees in this case; that this Court does not have authority to grant certiorari; and that this Court cannot review the trial court's decision under Rule 2; I would, nevertheless, review the trial court's decision in the exercise of this Court's inherent supervisory authority over the trial courts.
The majority, citing In re Brownlee, 301 N.C. 532, 548, 272 S.E.2d 861, 870-71 (1981), recognizes "that this Court has exercised its constitutional supervisory powers over inferior courts by allowing applications for review by nonparties under certain `exceptional' circumstances." Bailey v. State, 353 N.C. 142, 158 n. 2, 540 S.E.2d 313, 323 n. 2. (2000) (Bailey V).
This case, in my opinion, meets the exceptionality circumstance. First, it involves a trial court's discretion in setting attorneys' fees in a class action involving some 200,000 plaintiffs who have settled a tax claim against the State of North Carolina. Second, the attorney general appeared in the trial court on the question of whether the attorneys' fees were excessive, and was heard by the trial court. Third, as the majority notes, this case has been appealed to this Court five times. The first time, in a split decision, this Court held that plaintiffs could not proceed because they had not complied with mandatory statutory requirements. Bailey v. State, 330 N.C. 227, 412 S.E.2d 295 (1991) (Bailey I). The second time this Court, in a split decision, held that plaintiffs did not have to comply with the statutory requirements. Bailey v. State, 348 N.C. 130, 500 S.E.2d 54 *324 (1998) (Bailey II). The third time, this Court decided an issue which arose out of a legislative settlement of the case. Bailey v. State, 351 N.C. 440, 526 S.E.2d 657 (2000) (Bailey III). The fourth time, this Court settled a dispute as to who could be a member of the class, Bailey v. State, 352 N.C. 127, 529 S.E.2d 448 (2000) (Bailey IV). Now, in Bailey V, the question is whether the substantial attorneys' fees actually awarded by the trial court in this class action involving refund of taxes were reasonable or excessive. Bailey V, 353 N.C. 142, 540 S.E.2d 313.
This case is clearly a matter of public interest. The trial judge, recognizing this, allowed the attorney general to participate and be heard. The highest Court of the State should do likewise.
I have thoroughly reviewed the trial court's order which makes findings of fact, draws conclusions of law and sets, under all the circumstances, a reasonable attorney's fee. The trial judge did not abuse his discretion, especially in light of the fact that the General Assembly itself provided authority for a fee in excess of that awarded by the trial court.
I vote to affirm the trial court.
JUSTICE FREEMAN joins in this dissenting opinion.
NOTES
[1] N.C.G.S. § 62-20 provides as follows:

The Attorney General may intervene, when he deems it to be advisable in the public interest, in proceedings before the [Utilities] Commission on behalf of the using and consuming public, including utility users generally and agencies of the State. The Attorney General may institute and originate proceedings before the Commission in the name of the State, its agencies or citizens, in matters within the jurisdiction of the Commission. The Attorney General may appear before such State and federal courts and agencies as he deems it advisable in matters affecting public utility services. In the performance of his responsibilities under this section, the Attorney General shall have the right to employ expert witnesses, and the compensation and expenses therefor shall be paid from the Contingency and Emergency Fund. The Commission shall furnish the Attorney General with copies of all applications, petitions, pleadings, order[s] and decisions filed with or entered by the Commission. The Attorney General shall have access to all books, papers, studies, reports, and other documents filed with the Commission.
N.C.G.S. § 62-20 (1999).
[2] We recognize that this Court has exercised its constitutional supervisory powers over inferior courts by allowing applications for review by nonparties under certain "exceptional" circumstances. See In re Brownlee, 301 N.C. 532, 548, 272 S.E.2d 861, 870-71 (1981). However, in Brownlee and its progeny, In re Wharton, 305 N.C. 565, 569, 290 S.E.2d 688, 690-91 (1982), the nonparties were subject to financial obligations imposed by order of a trial court. No such financial burden, or other exceptional circumstance, is apparent in the case sub judice.