583 S.E.2d 430

**Ex Parte Charlie CONDON, Attorney General for the State of South Carolina, Appellant,**

**In re C. Bruce Littlejohn, on behalf of himself and all others similarly situated, Respondent,**

**v.**

STATE of South Carolina, the South Carolina Department of Revenue, Wal–Mart Stores, Inc., CVS Pharmacy, Inc., KMART Corporation, Eckerd Corporation, d/b/a Eckerd Drugs and all others similarly situated, S.C. Hyatt Corporation, and all others similarly situated, Piggly Wiggly Retail Stores, Inc., Piggly Wiggly # 2, Inc., Piggly Wiggly # 75, Inc., Harris Teeter, Inc., Winn–Dixie Raleigh, Inc., and all others similarly situated, Respondents.

No. 25670.

Supreme Court of South Carolina.

Heard April 2, 2003.

Decided June 30, 2003.

Deputy Attorney General Treva G. Ashworth, Assistant Deputy Attorney General Robert D. Cook, Assistant Deputy Attorney General J. Emory Smith, Jr., all of Columbia, for Appellant.

A. Camden Lewis and Ariail E. King, both of Lewis, Babcock & Hawkins, of Columbia; and Richard A. Harpootlian, of Columbia, for Respondent C. Bruce Littlejohn. Ronald W. Urban, of South Carolina Department of Revenue, of Columbia, for Respondents State of South Carolina and South Carolina Department of Revenue. Burnet R. Maybank, III, of Nexsen, Pruet, Jacobs & Pollard, of Columbia; and Paul A. Dominick, of Nexsen, Pruet, Jacobs, Pollard & Robinson, of Charleston, for Respondent Wal–Mart Stores, Inc. Bernie W. Ellis, of McNair Law Firm, of Greenville, for Respondent CVS Pharmacy, Inc. Erik P. Doerring, of McNair Law Firm, of Columbia, for Respondents KMART Corporation and S.C. Hyatt Corporation. B. Rush Smith, III, of Nelson, Mullins, Riley & Scarborough, of Columbia; and John C. von Lehe, Jr., of Nelson, Mullins, Riley & Scarborough, of Charleston, for Respondents Eckerd Corporation d/b/a Eckerd Drugs and Winn–Dixie, Raleigh, Inc. Marvin D. Infinger, of Haynsworth Sinkler Boyd, of Charleston, for Respondents Piggly Wiggly Retail Stores and Piggly Wiggly # 2, Inc. Charles H. Williams, of Williams & Williams, of Orangeburg, for Respondent Piggly Wiggly # 75, Inc. William H. Morrison, of Moore & Van Allen, of Charleston, for Respondent Harris Teeter, Inc.

Gene M. Connell, Jr., of Kelaher, Connell & Connor, P.C., of Surfside Beach, for Amicus Curiae.

CHIEF JUSTICE TOAL:

Appellant, Attorney General Condon ("Attorney General"), filed an objection to the circuit court's award of attorneys' fees to counsel for Respondents ("Respondents").

## FACTUAL / PROCEDURAL BACKGROUND

Respondents filed a class action suit on behalf of C. Bruce Littlejohn, and those similarly situated against the State of South Carolina and the Department of Revenue ("DOR") on July 10, 2000. The complaint alleged that plaintiff Littlejohn and other South Carolina citizens 85 years of age and older had failed to receive the one percent sales tax exemption provided for in S.C.Code Ann. §§ 12–36–2620 and 12–36–2630 as a result of the action and/or inaction of certain retailers and the State and DOR.[1] The Complaint alleged that the State had been unjustly enriched by the illegal tax collections, and requested a refund of taxes paid by the plaintiffs.

Subsequently, the State and DOR filed a motion to dismiss the complaint on grounds that the circuit court lacked subject matter jurisdiction. While the motion to dismiss was pending, plaintiffs amended their complaint to add several retail establishments as defendants.[2] The circuit court held a hearing to consider the State's motion to dismiss, and took the motion under advisement. While the motion was under advisement, the parties continued discovery, and ultimately commenced settlement negotiations. In September 2001, the parties reached a settlement.

### Settlement Agreement

The settlement agreement specified that the State and DOR would refund a total of $7.5 million to the defendant retailers

---

1. Section 12–36–2620 provides for a five percent sales and use tax, comprised of two components-a four percent tax and a one percent tax. Section 12–36–2630 provides for a seven percent tax on accommodations for transients, comprised of three components—a four percent tax, a one percent tax, and a two percent tax. Both sections exempt persons 85 years of age and older from paying the one percent tax when purchasing tangible personal property for his or her own personal use. The record reflects that Chief Justice Littlejohn realized he consistently paid this one percent tax and approached Respondents to recover the taxes paid.

2. Plaintiffs filed two amended complaints. The first amended complaint added Wal–Mart Stores, Inc. and Hyatt–Regency Hilton Head, Inc., on behalf of retailers and hotels/motels similarly situated. The Second Amended complaint added CVS Pharmacy, Inc., KMART Corporation, Eckerd Corporation, Piggly Wiggly Retail Stores, Inc., Piggly Wiggly # 32, Inc., Piggly Wiggly # 75, Inc., Harris Teeter, Inc., and Winn–Dixie, Raleigh, Inc.

and hotels to be held in trust and refunded to those members of the plaintiffs' class that made a claim. The agreement contained a mathematical formula for calculating the refund due to each class member. The settlement agreement left the power to calculate and award attorneys' fees with the circuit court under the following guidelines:

> The Court shall determine the appropriate amount of attorneys' fees for Plaintiff class counsel. The Plaintiffs recognize that none of the Defendants shall recommend or otherwise take a position on the amount of attorneys' fees and that the amount of such attorneys' fees shall be decided by the Court; provided, however, Defendant State of South Carolina may file with the Court a statement that members of the Budget and Control Board recommend to the Court that the Plaintiff's class counsel attorneys' fees be set at an amount that maximizes payment to class members and recommend that attorneys' fees be based on actual refunds paid to the Plaintiff class. Nothing in this agreement prohibits public officials, as individuals or as public officials, from discussing the amount of attorneys' fees awarded by the Court or taking a position before the Court about such fees.[3]

On September 21, 2001, the circuit court gave preliminary approval to the settlement, set a thirty day time period for objections, and scheduled a hearing for December 27, 2001, in order to review any objections, give final approval of the settlement, and determine attorneys' fees. The Attorney General, appearing for the first time in this action, filed objections to the award of attorneys' fees in the settlement agreement. None of the parties objected to the settlement or to the award of attorneys' fees. At the December hearing, the Attorney General argued that attorneys' fees should be based on a reasonable hourly rate.

## Award of Attorneys' Fees

The circuit court gave final approval to the settlement agreement in January 2002, and issued an order awarding attorneys' fees in the amount of 28% of the $7.5 million

---

**3.** The term "the Court" is used to refer to the circuit court throughout the settlement agreement.

common fund ($2.1 million), plus $52,174.22 in costs. The circuit court's order awarding fees includes a discussion of the procedural history of the case and of Respondents' efforts in initiating and settling the case. In addition, the circuit court used the factors for establishing a reasonable fee enumerated in Rule 1.5, *Rules of Professional Conduct,* Rule 407, SCACR, to determine the appropriate fee. The court's order included application of the following factors: (1) the novelty and difficulty of the issues, (2) the skills of counsel, (3) the time and labor of counsel, (4) the likelihood that acceptance of this case would preclude other employment by counsel, (5) the fees customarily charged in similar cases, (6) the amount involved and the award obtained, (7) the time and limitations imposed by the client, (8) the nature and length of the professional relationship between the client and counsel, (9) the experience, reputation, and ability of counsel, and (10) whether the fee contemplated was fixed or contingent. *See Jackson v. Speed,* 326 S.C. 289, 486 S.E.2d 750 (1997) (listing the factors the court should consider in determining a reasonable attorney's fee).[4] After applying the factors to the present case, the circuit court found that an award of 28% of the common fund, plus costs, was a fair and reasonable attorneys' fee.

The Attorney General filed a notice of appeal from the order awarding attorneys' fees and costs. This Court certified the case for review before the appeal pursuant to Rule 204(b), SCACR. Respondents filed a motion to dismiss the appeal on grounds that the Attorney General lacked standing to appeal. This Court denied the motion to dismiss, but did so "without prejudice to [Respondents'] right to argue this issue in its brief." The following issues are presently before the Court:

I. Is the Attorney General's appeal from the circuit court's award of attorneys' fees properly before this Court?

II. If so, was the circuit court's award of attorneys' fees reasonable?

---

4. The factors considered in the circuit court's order include all of the factors this Court listed in *Jackson,* although they are arranged in a different order and some are stated in slightly different terms.

## LAW/ANALYSIS

### I. Attorney General's Ability to Appeal

Respondents argue that the Attorney General's appeal from the circuit court's award of their attorneys' fees should be dismissed. For several reasons, we agree.

In support of their contention, Respondents cite *Bailey v. North Carolina*, 353 N.C. 142, 540 S.E.2d 313 (2000). In *Bailey*, plaintiffs (a consolidated class of state and federal retirees) sued North Carolina over the constitutionality of a tax exemption cap on retirement benefits. *Id.* After extensive litigation, in which the State was represented by the Attorney General, the State reached a settlement with the plaintiffs, and the circuit court awarded attorneys' fees to plaintiffs' counsel. *Id.* Subsequently, the Attorney General appealed from the award of fees, alleging that the fees awarded were excessive and against the public interest.[5] *Id.* Ultimately, the North Carolina Supreme Court dismissed his appeal as improper and also held that the Attorney General was precluded from seeking review of attorneys' fees by way of a petition for a writ of certiorari. *Id.*

Although the North Carolina Supreme Court discussed whether the Attorney General had standing at all to assert this appeal, the court chose to base its decision on the Attorney General's failure to intervene as required by Rule 24 of the North Carolina Rules of Civil Procedure ("NCRCP"). Rule 24, NCRCP, provides the procedure for intervention of right and permissive intervention. To intervene under either subsection of Rule 24, NCRCP, the person wishing to intervene "shall serve a motion to intervene upon all parties affected thereby." The Attorney General did not move to intervene. As such, the court reasoned,

> [a]s a review of the record reveals neither an intervention motion on the part of the Attorney General nor an order granting such a motion from the trial judge, we are con-

---

**5.** The North Carolina Supreme Court framed the Attorney General's argument as follows: "In short, the Attorney General argues that the amount awarded as fees to Class Counsel is excessive and concludes that since none of the prevailing class members have appealed the allocation of such fees, his office must carry the mantle—in the public interest." *Bailey*, 540 S.E.2d at 318.

strained by law to conclude that the Attorney General, at least in regard to his asserted role as "defender of the public interest," is not a party to this action.

*Id.* at 155–56, 540 S.E.2d 313. The court then dismissed the appeal as improper because only "parties" are entitled by law to appeal under Rule 3 of the North Carolina Rules of Appellate Procedure. *Id.* "A careful reading of Rule 3 reveals that its various subsections afford no avenue of appeal to either entities or persons who are nonparties to a civil action. Therefore, as we have already determined the Attorney General is not a party to the case *sub judice,* we can find no grounds on which to allow his appeal." *Id.* at 156, 540 S.E.2d 313.

Likewise, Rule 24 of the South Carolina Rules of Civil Procedure, ("SCRCP"), provides for both intervention of right and permissive intervention, and requires that a "a person desiring to intervene shall serve a motion to intervene upon the parties." In addition, Rule 201(b), SCACR, provides that only "a *party* aggrieved by an order, judgment, or sentence may appeal." (emphasis added). In the case at hand, it is undisputed that the Attorney General was not a party to the action originally, and never intervened to become a party.

In his reply brief, the Attorney General avoids discussing the impact of his failure to move for intervention pursuant to Rule 24, SCRCP. In fact, the Attorney General appears to admit that he is a nonparty, but argues that his duty to protect the public interest enables him to bring this appeal, even as a nonparty. Like the North Carolina Attorney General in the *Bailey* case, our Attorney General claims statutory and common law authority give him the ability to appeal in this case, apparently regardless of the Rules of Civil Procedure.[6] In support of his right to appeal, the Attorney General

---

6. The Attorney General attempts to distinguish *Bailey* from the present case by arguing that (1) the North Carolina Attorney General's authority to act in the public interest is not as broad as the South Carolina Attorney General's authority, and (2) North Carolina agreed not to involve itself in the determination of attorneys' fees in its settlement agreement with the plaintiffs, and South Carolina did not in this case. The Attorney General focuses on language within the settlement agreement that permits public officials to take a position on the fees. As pointed out earlier, however, this statement refers to taking a position

cites South Carolina Code Ann. § 1–7–40, which provides that the Attorney General

> shall appear for the State in the Supreme Court and the court of appeals in the trial and argument of all causes, criminal and civil, in which the State is a party or is interested, and in these causes in any other court or tribunal when required by the Governor or either branch of the General Assembly.

S.C.Code Ann. § 1–7–40 (Supp.2002). Because the State and the DOR are parties to this action, the Attorney General reasons that he can automatically "appear" for the State. In addition to the Code, the Attorney General cites several South Carolina cases in which the Attorney General's authority, as the State's chief law officer, to represent the State and to protect the public's interests has been recognized by this Court. *See State ex rel. Condon v. Hodges; State ex rel. Daniel v. Broad River Power Co.,* 157 S.C. 1, 153 S.E. 537 (1929); *State ex rel. Wolfe v. Sanders,* 118 S.C. 498, 110 S.E. 808 (1920).[7]

This Court has recognized that the Attorney General has broad statutory and common law authority in his capacity as the chief legal officer of the State to institute actions involving the welfare of the State and its citizens, including vindication of wrongs committed collectively against the citizens of the State. *See Condon v. Hodges,* 349 S.C. 232, 562 S.E.2d 623 (2002); *State v. Beach,* 271 S.C. 425, 248 S.E.2d 115 (1978). However, this Court has never held that the Attorney Gener-

---

on fees before the circuit court, which the Attorney General was permitted to do in this case. *Supra,* fn. 3.

**7.** It is interesting to note that the Attorney General instituted each of the above actions, and was a named party in each one. The Attorney General also cites two cases from other jurisdictions for the proposition that the Attorney General may take an appeal even though he is not a named party to a suit. *In re Estate of Tomlinson,* 65 Ill.2d 382, 3 Ill.Dec. 699, 359 N.E.2d 109 (1976); *Shevin v. Kerwin,* 279 So.2d 836 (Fl.1973) (allowing Attorney General to appeal from lower court decision holding state statute unconstitutional although he was not a party before the lower court). Although Illinois does seem to allow nonparties to appeal if they have an interest in the action that is "direct, immediate and substantial," this rule applies to all parties, not just the Attorney General. South Carolina has no comparable tradition of allowing nonparties to appeal.

al's authority to do so is unlimited or somehow uniquely exempts him from acting in accordance with the Rules of Civil Procedure. *See Beach.* The Attorney General cites *Watson v. Wall,* in which the Attorney General intervened in a will dispute in order to protect the public's interest in the charitable trust at issue, in support of his authority to assert the appeal in the present case. 229 S.C. 500, 93 S.E.2d 918 (1956). In *Watson,* however, the Attorney General moved to intervene, and, consequently, was named a party to the action. *Id.* Further, in *Watson,* the Attorney General had specific statutory support for his intervention under his duty " 'to enforce the application of funds given or appropriated to public charities.' " *Id.* at 515, 93 S.E.2d at 925 (quoting S.C.Code §§ 1–240 (1952)).

In our opinion, *Watson* actually supports the Respondents' contention that the Attorney General is *required,* like everyone else, to formally intervene and become a named party before he can file an appeal. Accordingly, we dismiss this appeal based on the Attorney General's failure to move for intervention as required by Rule 24, SCRCP. Such a ruling avoids the necessity of addressing the Attorney General's *standing* to become involved in this action, and makes clear that the Attorney General is required to follow the Rules of Civil Procedure when he wishes to become involved in a case.

In addition, we note that this holding serves the public interest in the finality of settlement agreements, particularly in settlements with the State. The settlement agreement in this case contains a "no appeal" provision. The agreement provides,

> [i]t is expressly acknowledged and agreed that the parties and their counsel will not institute, participate in, or encourage, any appeal from an order implementing this Agreement, provided, however, any party has the right to appeal an order which is substantially different from the terms of this Agreement, or which alters the consideration to be given by or to any party.

The stated purpose of the settlement agreement is "to settle this conflict by the terms set forth herein such that the Agreement forever ends all litigation." The agreement man-

dates that "[a]ny interpretation of language in this Agreement must be made so as to effectuate the [stated] purpose."

The Attorney General uses the statement within the Attorneys' Fees section of the settlement agreement to support his right to appeal. As discussed, the settlement agreement does not prevent public officials "from discussing the amount of attorneys' fees awarded by the Court or taking a position before the Court about such fees." However, it is clear from the settlement agreement's repeated reference to "the Court" that it is referring to the circuit court. As such, this provision must be construed to give the Attorney General, as a public official, the right to take a position on fees before the circuit court only, which the Attorney General did at the December 27, 2001, circuit court hearing. This is the interpretation most consistent with the no appeal provision in the agreement, and with the agreement's mandate to interpret language to further the parties' stated purpose of reaching a final settlement.

## II. Attorneys' Fees

In light of our decision on the preceding issue, it is unnecessary for us to address the reasonableness of attorney's fees. We note, however, that the circuit court's order demonstrates that the court considered each of the factors set out by this Court in *Jackson v. Speed,* 326 S.C. 289, 486 S.E.2d 750 (1997), and those factors enumerated in Rule 1.5, RPC, Rule 407, SCACR in determining that 28% of the common fund was a reasonable fee.

To prevail on appeal, this Court must find that the circuit court's findings of fact are not supported by "*any* competent evidence." *Blumberg v. Nealco, Inc.,* 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993) (citing *Baron Data Sys., Inc. v. Loter,* 297 S.C. 382, 377 S.E.2d 296 (1989) (emphasis added)). Although Respondents were awarded a very substantial sum ($2.1 million) for their work on this case that took 10 months to settle, Respondents achieved a good result for the class, including securing the prospective enforcement of the tax exemption, and took the risk of not earning any fee at all. Therefore, we would be inclined to find that there is evidence

to support the circuit court's findings on each factor under the "any competent evidence" standard.[8]

## CONCLUSION

For the foregoing reasons, we **DISMISS** this appeal.

MOORE, WALLER, BURNETT, JJ., and Acting Justice EDWARD B. COTTINGHAM, concur.

---

8. Rather than focusing on the contingency fee agreement in this case as the Attorney General claims the circuit court did, the circuit court spent much more energy on the "fees customarily charged in similar cases" factor. The analysis under this factor is particularly persuasive to us. *See Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir.1989) (finding that fees ordinarily "range from 20 percent to 30 percent of the common fund created").