ELMORE, Judge.
 

 *10
 
 Plaintiffs Rebecca R. Davis ("Rebecca") and Matthew M. Davis ("Matthew") (collectively, "plaintiffs"), daughter-in-law and grandson to ninety-nine-year-old Jeanette B. Davis ("Mrs. Davis"), brought this action, individually as expected beneficiaries of Mrs. Davis's 11 March 2002 revocable trust ("2002 Revocable Trust") and on Mrs. Davis's behalf as settlor of that trust, against defendants Janet D. Rizzo ("Rizzo"), who is Mrs. Davis's daughter, and Anne Page Watson ("Attorney Watson"), who was one of Mrs. Davis's estate planning attorneys. Plaintiffs alleged that Mrs. Davis's mental health has been deteriorating since 2010, and Rizzo has been exerting undue influence on her, thereby invalidating Mrs. Davis's estate planning decisions from 2014 to 2016, including executing a general power-of-attorney appointing Rizzo as her lawful attorney-in-fact; creating a new trust ("2016 Trust"); and transferring two parcels of real property held in her 2002 Revocable Trust to Rizzo, as trustee of the 2016 Trust. Following Mrs. Davis's motion to intervene as a party-defendant in the action, the trial court entered an order denying plaintiffs' motion to continue or stay proceedings, and granting Mrs. Davis's, Rizzo's, and Attorney Watson's (collectively, "defendants") motions to dismiss plaintiffs' claims under our Civil Procedure Rule 12(b)(6).
 

 After the trial court denied plaintiffs' postjudgment motion to amend that order pursuant to Civil Procedure Rules 59 and 60, plaintiffs filed notices of appeal from the trial court's orders (1) allowing Mrs. Davis to intervene as a party-defendant; (2) denying their motion to continue or stay proceedings, and dismissing their claims; and (3) denying their motion to amend the second order. In response, defendants have filed
 
 *11
 
 a motion to dismiss plaintiffs' appeals from the first two orders, arguing they violated our Appellate Procedure Rule 3(c) 's thirty-day jurisdictional time limit to take appeal, and that their postjudgment motion to amend did not toll this time because it was not a proper Rule 59 motion.
 
 See
 
 N.C. R. App. P. 3(c)(1), -(3).
 

 Because we agree the motion to amend did not constitute a proper Rule 59 motion sufficient to toll the appeal clock, we allow defendants' motion to dismiss plaintiffs' untimely appeals from the first two orders for lack of jurisdiction. Additionally, because plaintiffs have failed to demonstrate the trial court
 
 *577
 
 abused its discretion in denying their motion to amend, we affirm the third order.
 

 I. Background
 

 Ninety-nine-year-old Mrs. Davis and her late husband, Haywood Davis, Sr. ("Haywood, Sr."), had two children together, defendant Rizzo and Haywood Davis, Jr. ("Haywood, Jr."). Haywood, Jr. and his wife, Rebecca, had one child, Matthew.
 

 On 8 February 2017, plaintiffs Rebecca and Matthew, Mrs. Davis's daughter-in-law and grandson, individually as expected beneficiaries of Mrs. Davis's 2002 Revocable Trust and on Mrs. Davis's behalf as trustor of that trust, sued Rizzo, who is Mrs. Davis's only surviving child, and Attorney Watson, who was one of Mrs. Davis's estate planning attorneys. Plaintiffs asserted claims sounding in constructive fraud and breach of fiduciary duty, actual fraud, and undue influence.
 

 According to plaintiffs' complaint, a few years after her late husband Haywood, Sr.'s death, Mrs. Davis on 11 March 2002 created the 2002 Revocable Trust, later revised on 28 December 2010, naming herself as initial trustee and listing her two children, Rizzo and Haywood, Jr., as equal trust fund beneficiaries. The 2002 Revocable Trust provided that if Mrs. Davis's children should predecease her, Haywood, Jr.'s fifty percent share would be distributed equally between his wife, Rebecca, and their son, Matthew; and Rizzo's fifty percent share would be distributed equally to her children. At that time, Mrs. Davis's estate planning attorney, Rupe S. Gill ("Attorney Gill"), was named as first-successor trustee, and two parcels of real property were held in the 2002 Revocable Trust.
 

 However, plaintiffs' complaint alleged, four months after Haywood, Jr.'s death in 2014, Rizzo brought Mrs. Davis to Attorney Gill's office, where Rizzo exerted undue influence on Mrs. Davis to make certain revisions to her 2002 Revocable Trust, including replacing Attorney Gill with Rizzo as first-successor trustee and naming Attorney Gill as special
 
 *12
 
 co-trustee, and to execute a general power-of-attorney appointing Rizzo as her lawful attorney-in-fact. On 16 July 2015, Rizzo brought Mrs. Davis to defendant Attorney Watson's office, where Rizzo again exerted undue influence on Mrs. Davis to revise her 2002 Revocable Trust by removing Attorney Gill as special co-trustee. On 25 July 2016, Rizzo returned Mrs. Davis to Attorney Watson's office, where Rizzo again exerted undue influence on her to create a new trust, the 2016 Trust, naming Rizzo as trustee. That same day, Rizzo exerted undue influence on Mrs. Davis to convey by general warranty deeds, as trustee of her 2002 Revocable Trust, the two properties previously held in the 2002 Revocable Trust to Rizzo, as trustee of the 2016 Trust.
 

 Plaintiffs further alleged in their complaint that after Mrs. Davis revised her 2002 Revocable Trust in 2010, her "mental health deteriorated" and her "medical records show that [i]n recent years she has been suffering from ... impaired mental capacity, altered mental status, confusion, and memory loss"; that "when [Mrs. Davis] signed trust-related documents and deeds during the period from 2014 through 2016, she had diminished mental capacity and was under the undue influence of her daughter, [Rizzo]"; and that Mrs. Davis "is a real party in interest and a necessary party ... but lacks sufficient mental capacity to represent herself in these proceedings." Therefore, plaintiffs requested,
 
 inter alia
 
 , "a guardian ad litem be appointed to represent [Mrs. Davis's] interests ... as soon as is practicable."
 

 On 22 February 2017, Mrs. Davis filed a verified motion to intervene as a party-defendant in the action and to stay proceedings. Attached to her motion were affidavits from Mrs. Davis and her treating physician of the last seven years, Dr. Allison K. Gard. Mrs. Davis in her affidavit stated: "I have never been adjudicated to be incompetent," and "I am competent." Dr. Gard in her affidavit stated that she performed two "Mini-Mental Status Examination[s]" on Mrs. Davis in February 2017 and September 2016, who "scored 28 out of 30" on both tests. Dr. Gard also stated: "[B]ased upon my personal observation of Mrs. Davis, I do not find any reason why she cannot be in charge of her own affairs[,]" and that she "is one of the highest functioning 98-year-olds that I have had the pleasure to know."
 

 *578
 
 That same day, Mrs. Davis moved under our Civil Procedure Rule 12(b)(6) to dismiss plaintiffs' action, arguing that because she is alive and her 2002 Revocable Trust is revocable, (1) plaintiffs lacked standing to sue as either non-settlor beneficiaries of her 2002 Revocable Trust, or on her behalf as trustor of that trust; (2) there was no justiciable controversy; and (3) plaintiffs' complaint failed to allege a viable claim
 
 *13
 
 for damages. On 7 and 8 March 2017, defendants Rizzo and Attorney Watson, respectively, filed their answers and defenses, moving under,
 
 inter alia
 
 , Rule 12(b)(1) and -(b)(6) to dismiss plaintiffs' complaint for lack of standing and for failure to state a claim for relief. Defendants' dismissal motions were consolidated for hearing on 14 March.
 

 On 13 March, one day before the scheduled hearing, plaintiffs filed a motion to continue or stay proceedings. In their motion, plaintiffs argued there were "threshold issues ... which must be decided before the Court can proceed to a merits adjudication of the multiple motions to dismiss ... suddenly scheduled for hearing[,]" including "[w]hether Mrs. Davis had insufficient mental capacity to knowingly execute the 2016 Trust and the two deeds that conveyed valuable real properties from the 2002 Trust to the 2016 Trust[,]" and "[w]hether Mrs. Davis has insufficient mental capacity now, such that a guardian
 
 ad litem
 
 needs to be appointed to represent her interests in this case before any substantive litigation is allowed to proceed." Plaintiffs alleged they hired a "neuropsychiatrist, Dr. Thomas Gualtieri, to review Mrs. Davis's medical record to tell whether mental incapacity exists in Mrs. Davis"; that "Dr. Gualiteri would have to determine whether it would be necessary to proceed with an independent medical examination of Mrs. Davis"; and that "[a] hearing would then have to be held for the court to determine whether a guardian ad litem is required to represent Mrs. Davis' interests in this litigation." Accordingly, plaintiffs requested,
 
 inter alia
 
 , "[a]ll of the dispositive motions be reset for hearing after review of Mrs. Davis' medical record and examination by Dr. Gualtieri if necessary[.]"
 

 After the 14 March consolidated hearing on the parties' motions, the trial court entered orders (1) allowing Mrs. Davis's motion to intervene as a party-defendant ("intervention order"); and (2) denying plaintiffs' motion to continue or stay proceedings, and granting defendants' motions to dismiss the claims under Rule 12(b)(6) ("stay/dismissal order"). The stay/dismissal order was entered on 23 March 2017 and, within ten days after its entry, plaintiffs filed a timely motion styled "motion to amend order" pursuant to Rule 59(a)(1), -(a)(3), and -(a)(8), as well as Rule 60(b)(1) and -(b)(6).
 

 In their motion to amend, plaintiffs again argued they "raised substantial issues which have not been answered in this case[,]" including "[w]hether [Mrs.] Davis had sufficient mental capacity to knowingly execute certain trust documents[,]" and "[w]hether she had sufficient mental capacity to proceed as a party in this case without the appointment of a guardian ad litem[.]" Plaintiffs again alleged they hired Dr. Gualiteri to assess Mrs. Davis's mental capacity but that he has been unable to do so
 
 *14
 
 because he has not been able to review Mrs. Davis's medical records or examine her, allegations supported by Dr. Gualtieri's affidavit attached to the motion. Plaintiffs further alleged "[t]he order of dismissal of this case can be amended to include the relief prayed for herein without disturbing the finality of the dismissal order," and requested the trial court grant the following relevant relief: (1) "Allow Dr. Gualtieri to perform an independent medical examination of [Mrs.] Davis personally"; (2) "[r]elease the complete medical records of [Mrs.] Davis for the last ten (10) years for Dr. Gualtieri's review"; and (3) "[a]llow plaintiffs to be reunited with Mrs. Davis on a regular basis before she passes[.]"
 

 On 12 May 2017, without holding a hearing, the trial court entered an order denying plaintiffs' motion to amend ("postjudgment order"). In that order, the trial court determined:
 

 [T]he present motion to amend the [stay/dismissal] Order ... is essentially Plaintiffs' attempt to have the court reconsider and set aside the decisions made in the [stay/dismissal] Order .... The issues
 
 *579
 
 determined in the [stay/dismissal] Order ... are the same issues to be confronted in Plaintiffs' present motion to amend. This court's [stay/dismissal] Order dismissed all claims against Defendants and Defendant-Intervenor.
 

 On 7 June 2017, plaintiffs filed written notices of appeal from the intervention order, the stay/dismissal order, and the postjudgment order.
 

 II. Arguments
 

 On appeal, plaintiffs assert the trial court erred by (1) dismissing their claims before resolving the issue of Mrs. Davis's mental incapacity; (2) denying their motion to continue or stay proceedings; (3) dismissing their claims; and (4) denying their motion to amend the stay/dismissal order. Defendants respond that plaintiffs' appeals from the intervention and stay/dismissal orders, taken respectively seventy-six and fifty days after their entries, were untimely and must be dismissed for lack of jurisdiction. Defendants also argue the trial court properly denied the motion to amend. We discuss threshold jurisdictional issues first.
 

 III. Motion to Dismiss Appeals
 

 In their motion to dismiss plaintiffs' appeals from the stay/dismissal and intervention orders, defendants argue plaintiffs violated our Appellate Procedure Rule 3(c) by failing to file notice of appeal from those orders within thirty days of their entries, and that this thirty-day jurisdictional time limit to take appeal was not tolled by plaintiffs' motion to amend the stay/dismissal order, since that motion was not
 
 *15
 
 a proper motion under our Civil Procedure Rule 59.
 
 See
 
 N.C. R. App. P. 3(c)(1), -(3) ; N.C. Gen. Stat. § 1A-1, Rule 59. Defendants argue plaintiffs' motion to amend was not a proper Rule 59 motion sufficient to toll the appeal clock because it (1) requested relief the trial court could not grant, since plaintiffs sought not to "disturb[ ] the finality of the dismissal order" and thus the trial court lacked authority to order post-dismissal discovery or an injunction in an action no longer pending; (2) impermissibly advanced duplicative arguments already addressed and requests for relief already refused by the trial court in denying their motion to continue or stay proceedings; and (3) failed to allege sufficient grounds under Rule 59(a) for relief.
 

 In their response, plaintiffs assert their motion to amend was a proper Rule 59 motion that tolled the appeal clock, and thus their appeals were timely. Plaintiffs argue (1) although the stay/dismissal order contained a final judgment dismissing their claims, it was predicated upon the erroneous denial of their motion to continue or stay proceedings, and as to that part of the stay/dismissal order, the trial court violated Rule 17(b) by failing to inquire into Mrs. Davis's competency to proceed as a party before dismissing the case; (2) defendants should be equitably estopped from moving to dismiss their appeals based on Rizzo's subsequent fraudulent and other misconduct as alleged in plaintiffs' later filed Rule 60(b) motion, and because defendants unnecessarily delayed their filing of the motion to dismiss until after having participated in a lengthy settlement of the record on appeal; and (3) defendants' motion to dismiss "is but a diversionary tactic to prevent the trial court and now this Court from reviewing [their] case on the merits."
 

 A. Review Standard
 

 Generally, a party has thirty days from the entry of a final judgment to appeal, or we lack jurisdiction to review the judgment and must dismiss the appeal.
 
 See
 
 N.C. R. App. P. (3)(c) (requiring a party to appeal a judgment no longer than thirty days after its entry);
 
 Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., Inc.
 
 ,
 
 362 N.C. 191
 
 , 197,
 
 657 S.E.2d 361
 
 , 365 (2008) ("The provisions of Rule 3 are jurisdictional, and failure to follow the rule's prerequisites mandates dismissal of an appeal.") (quoting
 
 Bailey v. State
 
 ,
 
 353 N.C. 142
 
 , 156,
 
 540 S.E.2d 313
 
 , 322 (2000) ). However, a timely and proper Civil Procedure Rule 59 motion,
 
 see
 
 N.C. Gen. Stat. § 1A-1, Rule 59 (2017), stops the appeal clock until the trial court resolves the motion,
 
 see
 
 N.C. R. App. P. (3)(c)(3). But "when a party makes a motion pursuant to Rule 59 that is not a proper Rule 59 motion, the time for filing an appeal is not tolled."
 

 *16
 

 N.C. All. for Transp. Reform, Inc. v. N.C. Dep't of Transp.
 
 ,
 
 183 N.C. App. 466
 
 , 470,
 
 645 S.E.2d 105
 
 , 108 (citation omitted),
 
 disc. rev. denied
 
 ,
 
 *580
 

 361 N.C. 569
 
 ,
 
 650 S.E.2d 812
 
 (2007). We review
 
 de novo
 
 whether a postjudgment motion is a proper Civil Procedure Rule 59 motion sufficient to toll Appellate Procedure Rule 3(c) 's thirty-day jurisdictional appeal clock.
 
 See, e.g.
 
 ,
 
 id.
 
 at 469,
 
 645 S.E.2d at 107
 
 .
 

 B. Discussion
 

 North Carolina Civil Procedure "Rule 59(e) governs motions to alter or amend a
 
 judgment
 
 , and such motions are limited to the grounds listed in Rule 59(a)."
 
 Id.
 
 at 469,
 
 645 S.E.2d at 108
 
 (emphasis added) (citing N.C. Gen. Stat. § 1A-1, Rule 59(e) (2005) ). "This Court has adopted a liberal interpretation of the grounds listed in Rule 59(a) when applied to Rule 59(e) motions to amend an order entered without a jury trial and has recognized that Rule 59(a) 'provides ample basis for a party to seek relief on the basis that the trial court ... misapprehended or misapplied the applicable law.' "
 
 Baker v. Tucker
 
 ,
 
 239 N.C. App. 273
 
 , 274,
 
 768 S.E.2d 874
 
 , 875 (2015) (quoting
 
 Batlle v. Sabates
 
 ,
 
 198 N.C. App. 407
 
 , 416,
 
 681 S.E.2d 788
 
 , 795 (2009) ). But "[w]hile failure to give the number of the rule under which a motion is made is not necessarily fatal, the grounds for the motion and the relief sought must be consistent with the Rules of Civil Procedure."
 
 N.C. All. for Transp. Reform, Inc.
 
 ,
 
 183 N.C. App. at 469-70
 
 ,
 
 645 S.E.2d at
 
 108 (citing
 
 Gallbronner v. Mason
 
 ,
 
 101 N.C. App. 362
 
 , 366,
 
 399 S.E.2d 139
 
 , 141 (1991) ).
 

 Rule 59(e) authorizes a party to seek the relief of "alter[ing] or amend[ing] a
 
 judgment
 
 ." N.C. Gen. Stat. § 1A-1, Rule 59(e) (2017) (emphasis added). " 'A judgment is a determination or declaration on the merits of the rights and obligations of the parties to an action,' and an order is 'every direction of a court not included in a judgment.' "
 
 Curry v. First Fed. Sav. & Loan Ass'n of Charlotte
 
 ,
 
 125 N.C. App. 108
 
 , 112,
 
 479 S.E.2d 286
 
 , 289 (1997) (quoting
 
 Hunter v. City of Asheville
 
 ,
 
 80 N.C. App. 325
 
 , 327,
 
 341 S.E.2d 743
 
 , 744 (1986) ). " Rule 59, by its plain terms, does not apply to interlocutory, pretrial orders."
 
 Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC
 
 , --- N.C. App. ----, ----,
 
 794 S.E.2d 535
 
 , 540 (2016) ;
 
 see also
 

 id
 
 . (holding a Rule 59(e) motion to alter or amend a preliminary injunction order did not toll the appeal clock because, in relevant part, the order was not a judgment ending the case on the merits);
 
 Curry
 
 ,
 
 125 N.C. App. at 112
 
 ,
 
 479 S.E.2d at 289
 
 (holding a Rule 59(e) motion to alter or amend an order denying a motion to intervene did not toll the appeal clock because, in relevant part, the order was not a judgment).
 

 Additionally, while a postjudgment motion requesting reconsideration "may properly be treated as a Rule 59(e) motion, it cannot be used
 
 *17
 
 as a means to reargue matters already argued or to put forth arguments which were not made but could have been made."
 
 Smith v. Johnson
 
 ,
 
 125 N.C. App. 603
 
 , 606,
 
 481 S.E.2d 415
 
 , 417 (citations omitted),
 
 disc. rev. denied
 
 ,
 
 346 N.C. 283
 
 ,
 
 487 S.E.2d 554
 
 (1997) ;
 
 see also
 
 id.
 

 (holding a party's postjudgment motion that merely "attempt[ed] to reargue matters already decided by the trial court ... cannot be treated as a Rule 59(e) motion").
 

 Here, plaintiffs timely filed a "motion to amend order," identifying Rule 59(a)(1) ("Any irregularity by which any party was prevented from having a fair trial"), -(a)(3) ("Accident or surprise which ordinary prudence could not have guarded against"), and -(a)(8) ("Error in law occurring at the trial and objected to by the party making the motion"), N.C. Gen. Stat. § 1A-1, Rule 59(a)(1), -(a)(3), -(a)(8), as providing grounds to support their requested relief that the trial court "amend the order of dismissal" by granting their discovery and injunction requests "without disturbing the finality of the dismissal order." Specifically, plaintiffs sought to "amend the order of dismissal ... for the reasons that follow[:]"
 

 1. As described in the verified complaint, plaintiffs have raised substantial issues which have not been answered in this case:
 

 A. Whether [Mrs.] Davis had sufficient mental capacity to knowingly execute certain trust documents ... ;
 

 B. Whether she had sufficient mental capacity to proceed as a party in this case without the appointment of a guardian ad litem; and[ ]
 

 *581
 
 C. Whether plaintiffs ... should be reunited with Mrs. Davis, age 98, as soon as possible.
 

 2. As shown in his affidavit filed herewith, Dr. Thomas Gualtieri was retained by plaintiffs on February 21, 2017, to perform a neuropsychiatric evaluation of [Mrs.] Davis. He is eminently qualified to do so. But, as he testifies, he cannot develop a definitive evaluation of Mrs. Davis unless he can examine her in person and view her complete medical records.
 

 3. [Mrs.] Davis has for decades enjoyed a very close and loving relationship with her only son, Haywood Davis, Jr., deceased; her son's wife, Rebecca Davis; her grandson, Matthew Davis; and her great-grandchildren. They have prayed in their complaint that they be reunited with Mrs. Davis, 98, before she passes.
 

 *18
 
 4. Mrs. Davis has not filed an answer or otherwise been heard from in this case about the quality of her relationship with her grandson, greatgrandchildren, and daughter-in-law. But each of the defendants, and the attorney purporting to represent Mrs. Davis, have declared that Mrs. Davis is perfectly competent to answer for herself regarding her relationship with her loved ones.
 

 5. In their arguments before this court, defendants declared that this case would be more appropriately filed
 
 after
 
 Mrs. Davis passes. At the same time, they pressed for a hurry-up hearing to have the case dismissed
 
 before
 
 Mrs. Davis passes, which would ensure that Mrs. Davis never be examined for mental incapacity; that she never be reunited with her grandson, greatgrandchildren, and daughter-in-law; and that she never answer questions under oath about whether she still intended to treat her two children, and their respective families, equally in the disposition of her worldly assets after she passes. Counsel for Mrs. Davis filed a motion to dismiss the case without filing an answer or affidavit on her behalf, while arguing that Mrs. Davis was fully competent to answer for herself, and had decided that she never wanted to see her loved ones again, and never wanted her loved ones to see testamentary documents concerning her last wishes toward them.
 

 Plaintiffs further alleged the "order of dismissal of this case can be amended to include the relief prayed for herein without disturbing the finality of the dismissal order." They requested the following relief:
 

 1. Allow Dr. Gualtieri to perform an independent medical examination of [Mrs.] Davis personally;
 

 2. Release the complete medical records of [Mrs.] Davis for the last ten (10) years for Dr. Gualtieri's review;
 

 3. Allow plaintiffs to be reunited with Mrs. Davis on a regular basis before she passes;
 

 4. For such other and further relief as the Court deems appropriate; and
 

 5. That the Court consider the verified complaint as an affidavit in the cause, as well as Dr. Gualtieri's affidavit filed herewith, each submitted in support of this motion.
 

 *19
 
 In relevant part, Dr. Gualtieri stated in his affidavit that plaintiffs hired him on 21 February 2017 to perform a neuropsychiatric evaluation on Mrs. Davis, but he "cannot develop a definitive evaluation of Mrs. Davis unless [he] can perform an independent medical examination of her in person, and review her complete medical record."
 

 While plaintiffs' motion, under a liberal interpretation, may have alleged adequate
 
 grounds
 
 under Rule 59(a), as to the trial court's alleged error in failing to inquire into Mrs. Davis's competency to proceed as a party-defendant before dismissing the case, it failed to request valid Rule 59
 
 relief
 
 . Rule 59 applies to final judgments, not interlocutory orders.
 
 See, e.g.
 
 ,
 
 Tetra Tech Tesoro, Inc.
 
 , --- N.C. App. at ----,
 
 794 S.E.2d at 540
 
 . As plaintiffs concede, the stay/dismissal order contained both a final judgment, the grant of defendants' Rule 12(b)(6) motions to dismiss plaintiffs' claims, and an order denying plaintiffs' motion to continue or stay proceedings. Although the interlocutory decision to deny the motion to continue or stay proceedings presumably predicated the final judgment dismissing the case, plaintiffs' allegation in their motion to amend that "[t]he order of dismissal of this case can be amended
 
 *582
 
 to include the relief prayed for herein
 
 without disturbing the finality of the dismissal order
 
 " (emphasis added), combined with the nature of relief sought being essentially the same relief sought in their motion to continue or stay proceedings, reveals their motion to amend did not request proper Rule 59(e) relief in the form of reconsidering the final judgment dismissing their claims under Rule 12(b)(6), but of reconsidering the interlocutory decision denying their motion to continue or stay proceedings until Mrs. Davis's competency was determined.
 

 Rule 59 provides no grounds to request relief in the form of reconsidering an interlocutory decision a party alleges is collateral to the merits of a final judgment dismissing the case, or of amending an order dismissing a case by granting previously denied discovery requests or injunctive relief. Further, as defendants argue, in light of plaintiffs not requesting the trial court reconsider its Rule 12(b)(6) dismissals, the relief requested was beyond the trial court's jurisdiction to grant.
 
 See, e.g.
 
 ,
 
 Johnston v. Johnston
 
 ,
 
 218 N.C. 706
 
 , 709,
 
 12 S.E.2d 248
 
 , 250 (1940) (holding a trial court cannot enter orders affecting parties' rights after dismissing an action).
 

 Moreover, the trial court considered and rejected the merits of these grounds for relief when it denied plaintiffs' motion to continue or stay proceedings, and their motion to amend presented no pertinent facts not already before the trial court when it entered its stay/dismissal
 
 *20
 
 order. To support their motion to continue or stay proceedings, plaintiffs similarly alleged:
 

 There are threshold issues in this case which must be decided before the Court can proceed to a merits adjudication of multiple motions to dismiss ...:
 

 ....
 

 B. Whether Mrs. Davis had insufficient mental capacity to knowingly execute the 2016 Trust and the two deeds that conveyed valuable real properties from the 2002 Trust to the 2016 Trust, contrary to the express intent of Mrs. Davis formed when she plausibly did have sufficient mental capacity;
 

 C. Whether Mrs. Davis has insufficient mental capacity now, such that a guardian ad litem needs to be appointed to represent her interests in this case before any substantive litigation is allowed to proceed[.]
 

 ....
 

 14. Plaintiffs Rebecca and Matthew have ... employ[ed] a respected neuropsychiatrist, Dr. Thomas Gualtieri, to review Mrs. Davis's medical record to tell whether mental incapacity exists in Mrs. Davis. Once determining whether it does, Dr. Gualtieri would have to determine whether it would be necessary to proceed with an independent medical examination of Mrs. Davis to render a definitive diagnosis opinion, unless the parties could reach agreement to base this issue on the medical professionals' affidavits after examining the complete medical record. A hearing would then have to be held for the court to determine whether a guardian ad litem is required to represent Mrs. Davis' interests in this litigation.
 

 15.... Dr. Gualtieri should be allowed to review the entire medical record and to conduct an independent medical examination of Mrs. Davis, if necessary in order for him to form a[ ] more informed diagnosis/opinion.
 

 In that motion, plaintiffs also requested substantially the same relief:
 

 4. All of the dispositive motions be reset for hearing after review of Mrs. Davis' medical record and examination by Dr. Gualtieri if necessary[.]
 

 *21
 
 Rule 59 "cannot be used as a means to reargue matters already argued or to put forth arguments which were not made but could have been made."
 
 Smith
 
 , 125 N.C. App. at 606,
 
 481 S.E.2d at 417
 
 (citation omitted). Because plaintiffs "attempt[ed] to reargue matters already decided by the trial court ... the motion ... cannot be treated as a Rule 59(e) motion."
 

 Id.
 

 As plaintiffs' motion to amend failed to request valid Rule 59(e) relief, and reargued issues already addressed and requested relief already denied, it failed to constitute a proper Rule 59 motion sufficient to toll the appeal clock, rendering their appeals from the intervention
 
 *583
 
 and stay/dismissal orders untimely. While we may exercise our discretion and treat plaintiffs' brief as a petition for
 
 certiorari
 
 review, allow the petition, and review the orders,
 
 see, e.g.
 
 ,
 
 Raymond v. Raymond
 
 , --- N.C. App. ----, ----,
 
 811 S.E.2d 168
 
 , 173 (2018) (citations omitted), after considering the merits of their arguments, we decline to do so. Accordingly, we dismiss plaintiffs' appeals from the stay/dismissal and intervention orders. However, because plaintiffs timely appealed the postjudgment order, that order is properly before us.
 

 IV. Order Denying Postjudgment Relief
 

 Plaintiffs assert the trial court abused its discretion by denying their motion to amend the stay/dismissal order. Their motion to amend identified our Civil Procedure Rule 59(a)(1), -(a)(3), and -(a)(8), as well as Rule 60(b)(1) and -(b)(6).
 

 "As with Rule 59 motions, the standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion."
 
 Davis v. Davis
 
 ,
 
 360 N.C. 518
 
 , 523,
 
 631 S.E.2d 114
 
 , 118 (2006) (citing
 
 Sink v. Easter
 
 ,
 
 288 N.C. 183
 
 , 198,
 
 217 S.E.2d 532
 
 , 541 (1975) ). Having already concluded Rule 59 provided no grounds for the trial court to grant plaintiffs' requested relief without "disturbing the finality of the dismissal order," the trial court did not abuse its discretion in denying their motion under Rule 59 on this basis. Further, Rule 60(b) authorizes a trial court to "relieve a party ... from a
 
 final
 
 judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60(b)(1), -(b)(6) (2017) (emphasis added). Aside from plaintiffs failing to sufficiently argue grounds for Rule 60(b) relief under the subdivisions identified, either in their motion to amend or on appeal, plaintiffs failed to request proper Rule 60(b) relief in setting aside any final judgment, as their motion sought not to "disturb[ ] the finality of the dismissal order." Nonetheless, we elect to address plaintiffs' arguments.
 

 *22
 
 In their brief, plaintiffs contend, without supportive legal authority or further argument, the trial court erred and abused its discretion in denying their motion to amend by (1) failing to hold a hearing before entering an order denying the motion, (2) concluding the arguments advanced in their motion to amend duplicated arguments already raised, and (3) dismissing their claims without determining Mrs. Davis's competency to proceed as a party in the case. Plaintiffs also attempt in their brief to "refer[ ] to and incorporate[ ] ... by reference" "[t]he arguments contained in [their] response to defendants' motion to dismiss this appeal" "for further support of [their] contention that the trial court's denial of plaintiffs' motion to amend was an abuse of discretion." Plaintiffs' failures to adequately brief these issues constitutes waiver of these arguments.
 
 See
 
 N.C. R. App. P. 28(b)(6).
 

 However, we note a trial court need not hold a hearing before denying a postjudgment motion for relief,
 
 see, e.g.
 
 ,
 
 Ollo v. Mills
 
 ,
 
 136 N.C. App. 618
 
 , 625,
 
 525 S.E.2d 213
 
 , 217 (2000) ("Our review of the trial court's decision to enter an order on Ms. Ollo's motion under Rules 59 and 60 without notice or a hearing is limited to whether the trial judge abused his discretion."), and we have already concluded plaintiffs' motion to amend raised the same grounds for relief as their motion to continue or stay proceedings. Further, even if plaintiffs were permitted to incorporate into their brief arguments from their response to defendants' motion to dismiss, a thorough review of that response reveals the only potentially relevant argument is that the trial court violated North Carolina Civil Procedure Rule 17 by dismissing their claims without first inquiring into Mrs. Davis's competency to proceed as a party to the case.
 

 Under Rule 17, "[a] trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention, which raise a
 
 substantial question
 
 as to whether the litigant is
 
 non compos mentis
 
 ."
 
 In re J.A.A.
 
 ,
 
 175 N.C. App. 66
 
 , 72,
 
 623 S.E.2d 45
 
 , 49 (2005) (emphasis added) (citing
 
 Rutledge v. Rutledge
 
 ,
 
 10 N.C. App. 427
 
 , 432,
 
 179 S.E.2d 163
 
 , 166 (1971) ). "Whether the circumstances ... are sufficient
 
 *584
 
 to raise a substantial question as to the party's competency is a matter to be initially determined in the sound discretion of the trial judge."
 

 Id.
 

 (quoting
 
 Rutledge
 
 ,
 
 10 N.C. App. at 432
 
 ,
 
 179 S.E.2d at
 
 166 ).
 

 Here, plaintiffs' only showing that Mrs. Davis was mentally incompetent and needed a guardian
 
 ad litem
 
 appointed on her behalf was limited to unsubstantiated allegations in their complaint and arguments before the trial court that Mrs. Davis's mental health has been deteriorating since 2010. Although plaintiffs attached to their motion to continue
 
 *23
 
 or stay proceedings a one-and-a-half-page, type-written summary of Mrs. Davis's alleged medical records from 2008 to 2016, neither have they identified, nor has our review of the record revealed, any legitimate record from any medical provider. In light of the affidavits from Mrs. Davis and her treating physician of seven years, we find no abuse of discretion in the trial court determining that plaintiffs failed to raise a substantial question as to Mrs. Davis's competency.
 

 Because plaintiffs failed to show the trial court abused its discretion in denying their motion to amend under Rules 59 or 60, we affirm the postjudgment order.
 

 V. Conclusion
 

 Because plaintiffs' appeals from the intervention and stay/dismissal orders were untimely and their motion to amend the stay/dismissal order did not constitute a proper Civil Procedure Rule 59 motion sufficient to toll Appellate Procedure Rule 3(c) 's thirty-day jurisdictional appeal clock, we allow defendants' motion to dismiss plaintiffs' appeals from those orders. Because plaintiffs have failed to demonstrate the trial court abused its discretion in denying their motion to amend under Civil Procedure Rules 59 or 60, we affirm the postjudgment order.
 

 DISMISSED IN PART; AFFIRMED IN PART.
 

 Judges TYSON and ZACHARY concur.